IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| In re: | ) | Case No. 22-11694-BFK |
| | ) | (Chapter 11) |
| KTS SOLUTIONS, INC. | ) | |
| | ) | SubChapter V |
| Debtor. | ) | |
| | ) | |

### DEBTOR'S FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION DATED MARCH 21, 2023

Pursuant to Section 1189 of Title 11 of the United States Code, KTS Solutions, Inc. ("KTS," or the "Debtor"), by and through its attorneys, Justin P. Fasano, Steven L. Goldberg, and McNamee Hosea, P.A., files this *Debtor's First Amended Chapter 11 Plan of Reorganization dated March 21, 2023* (the "Plan"), and in support thereof, states as follows:

Debtor is the proponent of the Plan within the meaning of Bankruptcy Code section 1129. Reference is made to the disclosures below for a discussion of (i) the Debtor's history, assets, and liabilities, (ii) a summary and analysis of this Plan, and (iii) certain related matters. No solicitation materials have been approved for use in soliciting acceptances and rejections of the Plan. Subject to certain restrictions and requirements set forth in Bankruptcy Code sections 1127 and 1193 and Bankruptcy Rule 3019, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ CAREFULLY THE PLAN AND THE DISCLOSURES HEREIN BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

_____
Justin P. Fasano (VSB #75983)
McNamee Hosea
6411 Ivy Lane, Suite 200
Greenbelt, MD 20770
(301) 441-2420
jfasano@mhlawyers.com
*Counsel to the Debtor*

### i.      BACKGROUND FOR CASES FILED UNDER SUBCHAPTER V

The Debtor commenced this case under Chapter 11, Subchapter V, with the filing of a voluntary petition on December 9, 2022.  No creditors' committee has been appointed in this case.  Lawrence Katz has been appointed as Subchapter V trustee.

### A.    <u>Description and History of the Debtor's Businesses and Finances.</u>

i.      **<u>Background:</u>** The Debtor is a Virginia "S" corporation, which provides transportation services for disabled veterans, to and from medical appointments, under a series of contracts with the United States Department of Veterans Affairs (the "VA").  The Debtor is 100% owned by Kelvin Smith, and is a minority-owned, veteran-owned, service-disabled government contractor.  While payroll fluctuates, the Debtor generally employs 85-90 employees at any given time.

The Debtor was founded in 2005, and, until the COVID-19 pandemic, was generally profitable.  However, after the COVID-19 pandemic, many of the disabled veterans that it transported chose to stay away from VA hospitals for routine and elective healthcare.   The Debtor was required under its government contracts to maintain a large payroll, a substantial vehicle fleet, and expensive vehicle insurance, while its revenue significantly declined.  The Debtor eventually found itself relying on extremely expensive Merchant Cash Advances.  While purportedly structured as a sale of receivables, the Merchant Cash Advances bear marked similarities to loans, and many courts have treated them as such.  If viewed as loans, most of the Merchant Cash Advances would be viewed as charging interest in excess of 100%.

As a result of the COVID-19 pandemic, and the expensive financing needed to get through it, the Debtor found itself with very little cash prior to filing.  Its bank account at Navy Federal Credit Union, holding less than $20,000.00, was frozen due to pre-judgment attachment, while its account at Wells Fargo Bank, N.A. held less than $3,000.  The Debtor believed it faced imminent seizure of its vehicles by vehicle lenders/ lessors.

Since the bankruptcy case was filed, the Debtor has received its first installment of the Employee Retention Tax Credit, valued at over $1 million. It is no longer paying expensive daily payments to Merchant Cash Advance Claimants. Further, the Debtor has operated at a modest profit, and has even signed a new contract with Prince George's County, Maryland.  As of March 1, 2023, the Debtor had approximately $1.2 million in its bank accounts.  The Debtor believes it is well-positioned to confirm a feasible Chapter 11 plan.

**ii.**   **Senior Secured Claims:**  Prior to the commencement and throughout the duration of these proceedings, the Debtor has financed its business operations by factoring.  These transactions were governed by a Master Factoring and Security Agreement ("Factoring Agreement") with Action Capital.  Under the Factoring Agreement, the Debtor would sell or "factor" a specific receivable to Action Capital and would be paid 85% or 90% of its face value (85% for a non-government account and 90% for a government account).  When Action Capital collected payment on the factored receivable, it would retain a fee and remit the balance of the payment to the Debtor.  Pursuant to that certain UCC-1 Financing Statement filed with the Virginia State Corporation Commission on July 14, 2011,

file no. 11-07-14-5244-7, Action Capital asserts a first priority lien in and on substantially all assets of the Debtor, including, a first lien on and security interest in, among other things, all accounts, accounts receivable, contract rights, chattel paper, documents, instruments, general intangibles, reserves, reserve accounts, rebates and all books and records pertaining to the foregoing and all proceeds thereof.

As of the Petition Date, Action Capital was owed $899,438.45.  The Bankruptcy Court has approved Action's post-petition factoring of Debtor's receivables, and allowed Action Capital to receive payment on said receivables. Since the Petition Date, Action Capital has been paid down through the receipt of receivables, while the Debtor has chosen to forego factoring other receivables. The amount owed to Action Capital, as of March 1, 2023, was $661,344.30.

On or about August 5, 2020, the Debtor borrowed $2 million from the SBA pursuant to an Economic Injury Disaster Loan.  As of the Petition Date, the SBA was owed $2,088,186.64, with $205.48 accruing *per diem*.  The note was payable over 30 years at 3.75% interest.  Pursuant to that certain security agreement and UCC-1 Financing Statement filed with the Virginia State Corporation Commission on August 5, 2020, file no. 202008150066789, the SBA asserts a second priority lien in and against substantially all assets of the Debtor. Further, the SBA has asserted setoff rights as to $903,179 in receivables owed by the VA on the Petition Date under the unitary creditor doctrine, which the SBA asserts is superior to the lien of Action Capital.

    **iii.**   **Assets:**  The Debtor's primary assets consist of its vehicles,

accounts receivable, and deposit accounts, as well as an expected second Employe

Retention Tax Credit.  The value of its assets is estimated below:

    a.    **Vehicles:**  As of March 1, 2023, the Debtor owned or leased the vehicles listed on **Exhibit A.**  The equity in these vehicles (treating Enterprise vehicles as owned) is estimated to be $400,000.

    b.    **Accounts Receivable:** As of March 1, 2023, the Debtor had $956,401.75 in accounts receivable, all of which it deems to be collectible.

    c.    **Bank Accounts:**  As of March 1, 2023, the funds in the Debtor's bank account, less authorized deductions, had $1,273,354.66.

    d.    **Employee Retention Tax Credit:** As of March 1, 2023, the Debtor expects to receive a $610,808.33 Employee Retention Tax Credit.

    e.    **Miscellaneous:**  The Debtor has approximately $50,000.00 in other miscellaneous assets, such as office equipment, all of which are fully encumbered.

    iv.    <u>**Avoidance Actions:**</u>  The Debtor believes it has potential avoidance actions pursuant to 11 U.S.C. § 547 as listed on **Exhibit B.**  The Debtor does not believe there are any insider preferences, but will allow the Trustee to review the same, and if he deems appropriate, move for authority to pursue or settle such claims.  To the extent any merchant cash

advances are deemed to be unenforceable, the Debtor may have the right to seek repayment of all merchant cash advance repayments within three years of the Petition Date.  The Debtor reserves all rights to bring any Avoidance Actions.

**v.**      **Administrative Claims**:  As of March 1, 2023, the Debtor has incurred fees of approximately $39,000 to McNamee Hosea, P.A. (against a remaining retainer of $19,039.50) and approximately $11,000.00 to the Trustee (against a retainer of $5,000), meaning that as of March 1, 2023, there were approximately $26,000 in professional fees to be billed which are not covered by a retainer.  The Debtor believes, that, as of the Effective Date, it will have $50,000.00 in unpaid administrative professional claims, over and above any retainer provided, including claims owed to McNamee Hosea, and to the Trustee, although this may increase or decrease depending on the contentiousness of confirmation.

Additionally, the Debtor will owe pre-rejection administrative rent not covered by cure payments to HRC Mast One, LLC in the amount of $5,201.84.

As a SubChapter V Debtor, the Debtor does not pay U.S. Trustee fees.

**vi.**      **Priority Unsecured Claims**:  The Debtor has scheduled Priority Tax Claims of $42,737.52.  The Debtor estimates that it owes Non-Tax Priority Claims of approximately $134,000.00 relating to the priority portion of 401(k) contributions to which certain employees and former employees were entitled, and approximately $414,000 relating to non-priority claims for 401(k) contributions.   A listing of all allowed Non-Tax Priority claims of the Debtor is

listed as **Exhibit C.**

      **vii.**    **Merchant Cash Advance Claims** Various Merchant Cash Advance Claimants assert secured claims against the Debtor in the aggregate amount of approximately $2 million.  While each Merchant Cash Advance Claimant may assert that it purchased the Debtor's receivables, each claim held by a Merchant Cash Advance Claimant appears to be a de facto  secured loan. *See CapCall LLC v. Foster (In re Shoot the Moon LLC)*, 635 B.R. 797 (Bankr. D. Mont. 2021); *Fleetwood Servs. LLC v. Ram Cap. Funding LLC*, Case No. 20-cv-5120 (LJL), 2022 WL 1997207 (S.D.N.Y. June 6, 2022).  Further, because any lien held by a Merchant Cash Advance Claimant is junior to the liens of Action Capital and the SBA, who are owed amounts in excess of the value of the Debtor's assets, the Debtor asserts that each Merchant Cash Advance Claim is wholly unsecured pursuant to 11 U.S.C. § 506.  Further, to the extent that such Merchant Cash Advance Claim is treated as a loan, such Merchant Cash Advance Claims may be disallowed as violating state usury laws.  *See, e.g., GMI Grp. Inc. v. Unique Funding Solutions LLC (In re GMI Grp. Inc.)*, 606 B.R. 467 (N.D. Ga. 2019); *AKF, Inc. v. Western Foot & Ankle Center*, --- F.Supp.3d ---- (E.D.N.Y. 2022); *Haymount Urgent Care PC v. GoFund Advance, LLC,* --- F.Supp.3d ---- (S.D.N.Y. 2022); *Manganello v Park Slope Advanced Med. PLLC*, 42 Misc.3d 1222(A) (2014).  The Plan treats all Merchant Cash Advance Claims as loans which are wholly unsecured pursuant to 11 U.S.C. § 506.  The Debtor reserves all rights to object to all Merchant Cash Advance Claims.

      **viii.**    **Equipment Finance Claims:** The Debtor has financed 11 copiers,

using lease-to-own financing with four copier lenders: (1) First Citizens Bank &
Trust Company f/k/a CIT Bank, N.A. (3 copiers); (2) U.S. Bank, N.A. d/b/a U.S.
Bank Equipment Finance (3 copiers); (3) Xerox Financial Services LLC (3
copiers); and (4) Hewlett-Packard Financial Services Company (2 copiers).  Each
of the financing agreements, while structured as a lease, allows the Debtor to
purchase the copiers for a *de minimus* amount at the end of the lease.
Accordingly, each of above copier lenders is treated through the plan as holding a
secured claim and not a lease.  The Debtor is proposing to pay $1,000 per copier
to each of the above lenders on account of their secured claims, or alternatively, if
the copier lender so chooses, to surrender the copiers.

 **ix.** **Orange Grove**:  The Debtor leases over 30 vehicles from Orange
Grove Fleet Solutions, LLC ("Orange Grove") pursuant to a Master Vehicle
Lease Agreement dated June 25, 2019 (the "Vehicle Lease Agreement") for
medical passenger transportation vehicles. Between June 26, 2019, and December
28, 2021, Orange Grove, as Lessor, and KTS, as Lessee, entered into 37 Vehicle
Lease Orders.  Orange Grove asserts $457,765.31 in arrearages as of the Petition
Date.

 **x.** **Enterprise:** Enterprise Fleet Management, LLC is party to a
"Master Equity Lease" (with accompanying schedules of payment for each
vehicle) for over 30 of the Debtor's vehicles.  The leases are structured as lease-
to-own, as the Debtor has the right to purchase the vehicles for $400 each at the
end of the schedule.  Accordingly, the Debtor asserts that the Master Equity Lease
is a disguised financing agreement.  However, the distinction may be to a large

part academic, because even if the Master Equity Lease is treated as a financing agreement, Enterprise is likely oversecured. Further, the proposed treatment of Enterprise under the plan is the near-equivalent of assumption and cure pursuant to 11 U.S.C. § 365.

      xi.   **Ford:** Ford Motor Credit Company has financed five of the Debtor's vehicles. A summary of the vehicles financed by Ford Motor Credit Company is contained in Section 4.09 of this Plan.

      xii.   **Santander:** Santander Consumer USA, Inc. has financed an additional five of the Debtor's vehicles. A summary of the vehicles financed by Santander Consumer USA, Inc. is contained in Section 4.10 of this Plan.

      xiii.   **Automotive Credit:** Automotive Credit Corporation has financed an additional four of the Debtor's vehicles. A summary of the vehicles financed by Automotive Credit Corporation is contained in Section 4.12 of this Plan.

      xiv.   **Unsecured Claims:** The Debtor has approximately $4.8 million in general unsecured claims not subject to cure through assumption. The Debtor disputes certain of the claims. A listing of all currently allowed general unsecured claims of the Debtor is listed as **Exhibit D.**

      xv.   **Landlords:** During this case, the Debtor rejected commercial leases for real property with HRC Mast One, LLC; MMB Broyhill, LLC; and Storage King, LLC. The Debtor intends to assume commercial leases for real property with 8888 San Diego LLC in San Diego, California; Regus Management Group LLC in Kalamazoo, Michigan; TS 2nd Ave LLC in Gainesville, Florida; Storage King USA, LLC in Chesapeake, VA; and Yeung Interests, LLC in

Durham, North Carolina.

Pursuant to the version of 11 U.S.C.§ 365(d)(4) in effect at the time of the filing of this case, the Debtor has 210 days from the Petition Date (i.e., until July 7, 2023) to assume or reject commercial leases of real property.

B.  **Liquidation Analysis** To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit E.**

C.  **Ability to make future plan payments and operate without further reorganization/ Projected Disposable Income**   The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business.  The Debtor has provided total projected financial information as **Exhibit F.   Exhibit F** also sets forth the Debtor's projected disposable income.  The final Plan payment to unsecured creditors is expected to be paid on the date that is three years after the Effective Date of the Plan.  You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.

ii.      DEFINITIONS

The following terms (which appear in this Plan as capitalized terms), when used in this Plan, have the meanings set forth below:

**"Administrative Expense Claim"** means a claim for administrative costs or expenses that are allowable under Bankruptcy Code section 503(b).  These costs or expenses may include: (a)

actual, necessary costs and expenses of preserving the Debtor's Estate after the Petition Date but prior to the Effective Date; (b) Professional Fee Claims; and (c) Administrative Tax Claims.

"**Administrative Expense Claims Bar Date**" means thirty (30) days after the Effective Date, with respect to Administrative Expense Claims (except for Professional Fee Claims) for services rendered or expenses incurred from the Petition Date through the Effective Date relating to or arising out of any period after the Petition Date.

"**Administrative Tax Claim**" means a Claim that is not an Allowed Secured Claim and that a government unit asserts against the Debtor either for taxes or for related interest or penalties for any tax period that, in whole or in part, falls within the period beginning on the date of the Petition Date and ending on the Effective Date.

"**Allowed Administrative Expense Claim**" means an Administrative Expense Claim that is allowed as set forth in Section 3.02.

"**Allowed Claim**" means a Claim, other than an Administrative Expense Claim, (i) allowed by Final Order of the Bankruptcy Court, (ii) proof of which was timely filed on or before the Claims Bar Date or (iii) if no proof of Claim has been timely filed, which has been or hereafter is listed in the Bankruptcy Schedules as liquidated in amount and not disputed or contingent, and in each such case in clauses (ii) and (iii) above, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order.  Unless otherwise specified in the Plan, an Allowed Claim does not include interest on the Claim accruing after the Petition Date. Moreover, any Claim or portion of a Claim that was or is satisfied, forgiven, or released during the Case is not an Allowed Claim.  For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim which the Debtor may hold against the Holder thereof, to the extent that such Claim may be set off pursuant to applicable law.

"**Allowed Class '**\*\*' **Claim**" means an Allowed Claim in the particular class described.

"**Assets**" means all assets of the Debtor's Estate including, but not limited to, "property of the estate" as described in section 541 and 1186 of the Bankruptcy Code.

"**Avoidance Action**" means any Causes of Action arising under Bankruptcy Code sections 542, 543, 544, 547, 548, 549, 550, 551, 552, and 553 or under related state or federal statutes and common law, including without limitation all fraudulent conveyance laws, fraudulent transfer laws, and all non-bankruptcy laws vesting in Creditors any and all rights to avoid, rescind, or recover on account of transfers, whether or not litigation is commenced to prosecute such Cause of Action.

"**Ballot**" means the Ballot for accepting or rejecting the Plan.

"**Ballot Date**" means the date set by the Bankruptcy Court by which all Ballots with respect to the Plan must be received.

**"Bankruptcy Code"** means title 11 of the United States Code, as now in effect or hereafter amended and as applicable to the Case.

**"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the Eastern District of Virginia.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure.

**"Bankruptcy Schedules"** means the Schedules of Assets and Liabilities and Statement of Financial Affairs filed by the Debtor, as the same may have been amended from time to time.

**"Business Day"** means any day other than a Saturday, Sunday or a legal holiday (as defined in Bankruptcy Rule 9006(a)).

**"Case"** means the above-captioned case commenced by the Debtor in the Bankruptcy Court.

**"Cash"** means cash or cash equivalents including, but not limited to, bank deposits, checks or other similar items.

**"Causes of Action"** means any and all claims, demands, rights, actions, causes of action and suits of the Debtor and the Estate, of any kind or character whatsoever, known or unknown, suspected or unsuspected, matured or unmatured, whether arising prior to, on or after the Petition Date, in contract or in tort, at law or in equity or under any other theory of law, whether or not previously reduced to judgment by the Debtor, including but not limited to (1) rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law; (2) the right to object to claims or interests; (3) claims pursuant to section 362 of the Bankruptcy Code; (4) such claims and defenses as fraud, negligence, breach of fiduciary duty, corporate waste, unlawful dividends, mistake, duress and usury; (5) all Avoidance Actions; (6) claims for tax refunds; (7) claims pursuant to section 510 of the Bankruptcy Code, and (8) Section 506(c) Claims; and (9) any other claims which may be asserted against third parties.

**"Claim"** means a claim as that term is defined in Bankruptcy Code section 101(5).

**"Claims Bar Date"** means, with respect to Claims filed by Creditors other than Governmental Agencies, February 17, 2023, which was the last date for Creditors other than Governmental Agencies to file claims pursuant to the Notice of Chapter 11 Bankruptcy Case [Docket No. 7] and with respect to Claims filed by the Debtor on behalf of Creditors, March 17, 2023, which is the last date for the Debtor to file Claims on behalf of Creditors against the Estate pursuant to Federal Rule of Bankruptcy Procedure 3004, and with respect to Claims filed by Governmental Agencies, June 7, 2023, the last date for Governmental Agencies to file Claims pursuant to Notice of Chapter 11 Bankruptcy Case, and with respect to Claims filed by the Debtor on behalf of Governmental Agencies, July 7, 2023, which was the last date for the Debtor to file Claims on behalf of Governmental Agencies against the Estate pursuant to Federal Rule of Bankruptcy Procedure 3004.  **Notwithstanding the foregoing, the deadline for creditors to amend claims filed pursuant to 11 U.S.C. 501 or deemed filed pursuant to 11 U.S.C. §**

12

**1111(a) shall be 30 days after the Effective Date.  Furthermore, for each Creditor who was not listed nor scheduled under section §521(a)(1) of the Bankruptcy Code, with the name, if known to the Debtor, of such Creditor in time to permit timely filing of a proof of claim, the Claims Bar Date will be extended to 30 days after such date such Creditor obtained knowledge of the Bankruptcy Case, unless such Creditor had sufficient notice or knowledge of the Bankruptcy Case in time to permit timely filing of a proof of claim.**

**"Claims Objection Deadline"** means the last day for filing objections to General Unsecured Claims, which day shall be the later of (a) sixty (60) days after the Effective Date or (b) such other date as the Bankruptcy Court may order.  The Debtor may obtain a one time automatic extension of the Claims Objection Deadline by filing a notice of extension of the Claims Objection Deadline, which shall automatically extend the Claims Objection Deadline until the date specified in such notice up to an additional sixty (60)  days after the current Claims Objection Deadline.  Thereafter, any further extension of the Claims Objection Deadline shall require bankruptcy court approval, and may be granted only upon a showing of exigent circumstances.  In the event that such a motion to further extend the Claims Objection Deadline is denied, the Claims Objection Deadline shall be the later of the current Claims Objection Deadline (as previously extended, if applicable) or sixty (60) days after the Bankruptcy Court's entry of an order denying the motion to further extend the Claims Objection Deadline.

**"Class"** means a group of Claims as classified in Article III.

 "**Confirmation**" means the entry of an Order by the Bankruptcy Court confirming the Plan pursuant to section 1191 of the Bankruptcy Code.

**"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

**"Confirmation Hearing"** means the hearing regarding Plan Confirmation.

**"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan under Bankruptcy Code section 1191.

**"Creditor"** has the meaning set forth in Section 101(10) of the Bankruptcy Code.

**"Debtor"** means KTS Solutions, Inc.

**"Disputed Claim"** means a Claim:

(a) As to which a proof of claim is filed or is deemed filed under Bankruptcy Rule 3003(b)(1) or a proof of interest is filed or is deemed filed under Bankruptcy Rule 3003(b)(2); and

(b) As to which an objection: (1) has been timely filed; and (2) has neither been overruled nor been denied by a Final Order and has not been withdrawn.

**"Disputed Claim Amount"** means (a) if the liquidated amount is set forth in the proof of claim relating to a Disputed Claim, (i) the liquidated amount set forth in the proof of claim relating to

the Disputed Claim as may have been modified by Final Order of the Bankruptcy Court; (ii) the disputed amount as agreed to by the Debtor and the Holder of such Disputed Claim; or (iii) if a request for estimation is filed by any party, the amount estimated as disputed by the Bankruptcy Court; (b) if no liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) the disputed amount agreed to by the Debtor and the Holder of such Disputed Claim or (ii) zero; or (c) if the Claim was listed on the Bankruptcy Schedules as unliquidated, contingent or disputed and no proof of claim was filed, or deemed to have been filed, by the applicable Claims Bar Date and the Claim has not been resolved by written agreement of the parties or an order of the Bankruptcy Court, zero.

**"Distribution"** means any transfer under the Plan of Cash or other property or instruments to either a Holder of an Allowed Administrative Expense Claim or a Holder of an Allowed Claim.

**"Effective Date"** has the meaning set forth in Section 8.02.

**"Entity"** has the meaning set forth in Section 101(15) of the Bankruptcy Code.

**"Estate"** means the bankruptcy estate of the Debtor.

"**Estate Parties**" means the Persons referenced in Section 9.01.

"**Executory Contracts**" means those agreements or obligations which are not fully performed by the Debtor and are subject to assumption or rejection pursuant to §365 of the Bankruptcy Code.

**"Final Fee Application"** means the final requests or applications for payment of Professional Fee Claims.

**"Final Order"** means an order or judgment of a court of competent jurisdiction entered on such court's official docket:

(a) That has not been reversed, rescinded, stayed, modified, or amended;
(b) That is in full force and effect; and
(c) With respect to which: (1) the time to appeal or to seek review, remand, rehearing, or a *writ of certiorari* has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or *writ of certiorari* is pending; or (2) any such appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a *writ of certiorari* was sought.

**"General Unsecured Claim"** means a Claim that is not an Administrative Expense Claim, a Priority Tax Claim, a Non-Tax Priority Claim, or a Secured Claim.

**"Governmental Agency(y)(ies)"** means any department or agency of the United States of America or any state, including quasi-governmental agencies, acting through, or funded by any such department or agency, through state or federal government charter, or otherwise.

**"Holder"** means the holder of a Claim.

**"Local Rules"** means the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of Virginia, as now in effect or hereafter amended and applicable to the Case.

**"Merchant Cash Advance Claim"** means any claim held by a Merchant Cash Advance Claimant.

**"Merchant Cash Advance Claimants"** means the Creditors listed on **Exhibit G**.

**"Non-Dischargeable Claim"** means any claim which is held to be non-dischargeable pursuant to 11 U.S.C. § 1192(2).

**"Non-Tax Priority Claim"** means a Claim, other than and without duplication of an Administrative Expense Claim or Priority Tax Claim, which is entitled to priority in payment pursuant to Bankruptcy Code section 507(a)(3), (4), (5), (6), (7), (9) or (10).

**"Person"** means any natural person or Entity.

**"Petition Date"** means December 9, 2022.

**"Plan"** means this Debtor's First Amended Chapter 11 Plan of Reorganization dated March 21, 2023, as it may be amended or supplemented.

**"Plan Document"** means this Plan, and any Exhibits thereto.

**"Post-Effective Date Expenses"** means any expenses incurred by the Debtor after the Effective Date including, but not limited to, professional fees and expenses incurred by the Debtor and expenses incurred by the Debtor in the ordinary course of business.

**"Post-Petition"** means the time after the Petition Date.

**"Priority Tax Claim"** means a Claim entitled to priority against the Debtor under Bankruptcy Code section 507(a)(8), or which is secured by the Assets of the Debtor.

**"Professional Fee Claim"** means a Claim under Bankruptcy Code sections 326, 327, 328, 330, 331, 503(b), or 1103 for compensation for services rendered by any of the Professionals, or related expenses, incurred after the Petition Date but prior to the Effective Date on behalf of the Estate; or

**"Professionals"** means the professionals (attorneys, accountants, appraisers, financial advisors, and the like) employed by the Estate with the approval of the Bankruptcy Court at the expense of the Estate pursuant to sections 327 and/or 328 of the Bankruptcy Code, and shall also include the Trustee.

**"Quarterly Avoidance Action Proceeds"** means the proceeds obtained by the Debtor and/or Trustee in any given calendar quarter after the Effective Date from the resolution, whether through adjudication or settlement or otherwise, of any Avoidance Actions.

**"Rejection Damage Claim"** means a Claim for damages arising under an unexpired lease of real or personal property or an executory contract that the Debtor rejects under Bankruptcy Code section 365 or pursuant to the terms of this Plan.

**"SBA"** means the United States Small Business Administration.

**"SBA Start Date"** has the meaning assigned to it in Section 4.03 of the Plan.

**"Section 506(c) Claim"** means any surcharge claim asserted by the Debtor after the Effective Date pursuant to Section 506(c) of the Bankruptcy Code.

 **"Secured Claim"** means a Claim that is secured by a valid and unavoidable lien against property in which an Estate has an interest or that is subject to setoff under Bankruptcy Code section 553.  A Claim is a Secured Claim only to the extent of the value of the claimholder's interest in the collateral securing the Claim or to the extent of the amount subject to setoff, whichever is applicable, and as determined under Bankruptcy Code section 506(a).

**"Trustee"** means Lawrence Katz, or any successor SubChapter V trustee who may be appointed pursuant to 11 U.S.C. § 1183.

**"Unclaimed Property"** means any Cash or other property which is unclaimed for sixty (60) days after its distribution.

**"U.S. Trustee"** means the Office of the United States Trustee.

## ARTICLE I – SUMMARY OF PLAN AND CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The Plan divides Creditors and Interest Holders into Classes based on their legal rights and interests and provides for the satisfaction and/or reinstatement of Claims based upon such classification.  This Article classifies Claims, except for Administrative Expense Claims and Priority Tax Claims, which are not classified, for all purposes, including voting, confirmation, and Distribution under the Plan.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the Class description.  To the extent that part of the Claim or Interest falls within a different Class description, the Claim or Interest is classified in that different Class.  The following table summarizes the Classes of Claims and Interests under this Plan.

16

| **CLASS** | **DESCRIPTION** | **IMPAIRED/ UNIMPAIRED** | **VOTING STATUS** |
|---|---|---|---|
| Class 1 | Non-Tax Priority Claims | Unimpaired | Deemed to Accept; Not Entitled to Vote on the Plan |
| Class 2 | Secured Claim of Action Capital Corporation | Impaired | Impaired, Entitled to Vote on the Plan |
| Class 3 | Secured Claim of the SBA | Impaired | Impaired, Entitled to Vote on the Plan |
| Class 4 | Claims of Merchant Cash Advance Claimant | Impaired | Impaired, Entitled to Vote on the Plan |
| Class 5 | Claim of First Citizens Bank & Trust Company f/k/a CIT Bank, N.A. | Impaired | Impaired, Entitled to Vote on the Plan |
| Class 6 | Claim of U.S. Bank, N.A. d/b/a U.S. Bank Equipment Finance | Impaired | Impaired, Entitled to Vote on the Plan |
| Class 7 | Claim of Xerox Financial Services LLC | Impaired | Impaired, Entitled to Vote on the Plan |
| Class 8 | Claim of Hewlett-Packard Financial Services Company | Impaired | Impaired, Entitled to Vote on the Plan |
| Class 9 a-e | Claims of Ford Motor Credit Company LLC | Impaired | Impaired, Entitled to Vote on the Plan |
| Class 10 a-e | Claims of Santander Consumer USA, Inc. | Impaired | Impaired, Entitled to Vote on the Plan |
| Class 11 | Claim of Enterprise Fleet Management, Inc. | Impaired | Impaired, Entitled to Vote on the Plan |
| Class 12 | Claims of Automotive Credit Corporation | Impaired | Impaired, Entitled to Vote on the Plan |
| Class 13 | General Unsecured Claims | Impaired | Impaired, Entitled to Vote on the Plan |
| Class 14 | Interests | Unimpaired | Deemed to Accept; Not Entitled to Vote on the Plan |

The treatment in this Plan is in full and complete satisfaction of all of the legal, contractual, and equitable rights that each Holder of an Allowed Claim or Interest may have in or against the Debtor, the Estate or the Debtor's property. This treatment supersedes and replaces any agreements or rights those Holders have in or against the Debtor, the Estate or property of the Debtor or the Estate. All Distributions under the Plan will be tendered to the Person holding the Allowed Claim. **EXCEPT AS SPECIFICALLY SET FORTH IN THIS PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM.**

### ARTICLE III: TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS, AND QUARTERLY AND COURT FEES

**3.01 Allowance of Unclassified Claims (Administrative Expense Claims and Priority Tax Claims):** Persons that hold Administrative Expense Claims and that do not timely file and serve a motion or application seeking payment in accordance with this Article and the Bankruptcy Code will be **FOREVER BARRED** from asserting those Administrative Expense Claims.

**3.02 Allowed Administrative Expense Claims Other than Professional Fee Claims:** An Administrative Expense Claim that is not a Professional Fee Claim will be allowed only if: on or before the Administrative Expense Claim Bar Date, the Person holding the Claim both filed with the Bankruptcy Court a motion or application requesting that the estate pay the Claim and served the motion or application on the Debtor, and the Trustee. Provided, however, that the Debtor may elect to deem an Administrative Expense Claim (other than a Professional Fee Claim) incurred in the ordinary course of the Debtor's affairs to be treated as an Allowed Administrative Expense Claim in accordance with the terms and conditions of the particular transaction that gave rise to the Claim without requiring the Person holding such Administrative Expense Claim to file a request for payment. In the event that an objection is timely filed to an Administrative Expense Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Expense Claim.

**3.03 Allowed Professional Fee Claims:** Final Fee Applications must be filed no later than twenty-one (21) days after the Effective Date. Final Fee Applications will be noticed in accordance with the Bankruptcy Rules and Local Rules. Objections, if any, shall be filed in accordance with the Bankruptcy Rules and Local Rules and served on the Professional whose Final Fee Application is being objected to, the Debtor, the Trustee, and the Office of the U.S. Trustee.

**3.04 Allowed Priority Tax Claims:** The Claim of any Person holding a Priority Tax Claim will be allowed only if such Person filed a Claim prior to the Claims Bar Date and no objection to the Priority Tax Claim is filed by the Claims Objection Deadline. In the event that an

objection is timely filed to a Priority Tax Claim, the Bankruptcy Court shall determine the allowed amount of such Priority Tax Claim.  In the event that no objection is timely filed to an otherwise properly filed Priority Tax Claim, such Priority Tax Claim shall be deemed allowed in the amount requested.

### 3.05 Treatment of Unclassified Claims (Administrative Expense Claims and Priority Tax Claims)

**3.05.1  Administrative Expense Claims (including Professional Fee Claims):**   Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, each holder of an Allowed Administrative Expense Claim shall receive from the Debtor, in full and complete settlement, satisfaction and discharge of its Allowed Administrative Expense Claim, on the later to occur of (i) the Effective Date (or as soon as reasonably practicable thereafter) and (ii) the date on which such Claim shall become an Allowed Claim, Cash equal to the unpaid portion of such Allowed Expense Administrative Claim; provided, however, that Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtor in the ordinary course of their affairs during the Case may be paid in the ordinary course of affairs in accordance with the terms and conditions of any agreements relating thereto by the Debtor.  Holders of Administrative Claims will be paid in full on account of their Claims and are not entitled to vote on this Plan.

**3.05.2  Priority Tax Claims:** Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, at the sole option of the Debtor, each holder of an Allowed Priority Tax Claim shall receive from the Debtor, in full and complete settlement, satisfaction and discharge of its Allowed Priority Tax Claim: (a) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or (b) equal quarterly Cash payments in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at the federal judgment rate in effect on the Petition Date, over a period not to end later than three (3) years after the Petition Date, which shall begin on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim.  Holders of Priority Tax Claims will be paid in full on account of such Claims and are not entitled to vote on this Plan.

### ARTICLE 4  - Classified Claims

**4.01 Classification and Treatment of Non Tax Priority Claims (Class 1)**

**Classification:**      Class 1 consists of all Non-Tax Priority Claims.

**Treatment:**      Provided that a Non-Tax Priority Claim has not been paid prior to the Effective Date, and except to the extent that a holder of a Non-Tax Priority Claim agrees to a different treatment, each holder of an Allowed Non-Tax Priority Claim shall receive from the Debtor, in full and complete settlement, satisfaction and discharge of its Allowed Non-Tax Priority Claim, on the Effective Date, Cash equal to the unpaid portion of such Allowed Non-Tax Priority Claim.  Class 1 is unimpaired under this Plan and is conclusively presumed to have accepted this Plan and, therefore, Holders of Class 1 Claims are not entitled to vote to accept or reject this Plan.

**4.02 Secured Claim of Action Capital (Class 2)**

**Classification:**      Class 2 consists of the secured claim of Action Capital.

**Treatment:**      Action Capital shall have an allowed secured claim for all amounts owed as of the Effective Date.  The amount owed to Action Capital as of March 1, 2023 is $661,344.30.  Action Capital's shall be paid entirely from receivables which it has factored after the bankruptcy petition.

The lien of Action Capital on the Debtor's assets shall be preserved, to the same extent it existed prior to Confirmation and as modified by this Court's orders approving post-petition financing., Class 2 is impaired under this Plan and, therefore, Holders of Class 2 Claims are entitled to vote to accept or reject this Plan.

Class 2 claims will be discharged upon confirmation if this Plan is confirmed pursuant to 11 U.S.C. § 1191(a) and upon completion of the Plan if this Plan is confirmed pursuant to 11 U.S.C. § 1191(b).

**4.03 Secured Claim of the SBA (Class 3)**

**Classification:**      Class 3 consists of the claim of the SBA.

**Treatment:**      The SBA shall have an allowed secured claim for $903,179.95, which shall accrue interest at the rate of 3.75 percent per annum, and a general unsecured claim for $1,185,006.69.  As to the SBA's secured claim, the Debtor shall pay, beginning on the first business day of the first full month after the Effective Date (the "SBA Start Date"), and on the first business day of each month thereafter, monthly payments of $5,487.95 for a period of 30 years.  All remaining principal and interest will be due 30 years after the SBA Start Date.  The

unsecured portion of the SBA's claim shall be treated as a Class 13 general unsecured claim.

To the extent of the amount of its allowed secured claim, the lien of the SBA on the Debtor's assets shall be preserved, to the same extent it existed prior to Confirmation and as modified by this Court's orders approving post-petition financing.  Class 3 is impaired under this Plan and, therefore, Holders of Class 3 Claims are entitled to vote to accept or reject this Plan.

The secured portion of the SBA's claim will not be discharged as it will be paid over more than five years. 11 U.S.C.§ 1192(1). The unsecured portion of the SBA's claim will be discharged upon confirmation if this Plan is confirmed pursuant to 11 U.S.C. § 1191(a) and upon completion of the Plan if this Plan is confirmed pursuant to 11 U.S.C. § 1191(b).

### 4.04 Claims held by Merchant Cash Advance Claimants (Class 4)

**Classification:**      Class 4 consists of the claims held by Merchant Cash Advance Claimants.

**Treatment:**   Notwithstanding any characterization by a Merchant Cash Advance Claimant that it purchased the Debtor's receivables, each claim held by a Merchant Cash Advance Claimant shall be treated as a secured loan.  Further, because any lien held by a Merchant Cash Advance Claimant is junior to the liens of Action Capital and the SBA, who are owed amounts in excess of the Debtor's assets, each claim held by a Merchant Cash Advance Claimant claim shall be treated as a Class 13 general unsecured claim.  No holder of a Merchant Cash Advance Claimant may assert any right in any receivables generated by the Debtor after the Petition Date.

Each such claim will be discharged upon confirmation if this Plan is confirmed pursuant to 11 U.S.C. § 1191(a) and upon completion of the Plan if this Plan is confirmed pursuant to 11 U.S.C. § 1191(b).

For purposes of 11 U.S.C § 1126, claims held by Merchant Cash Advance Claimants will be counted as Class 13 claims.

### 4.05 Claim held by First Citizens Bank & Trust Company f/k/a CIT Bank, N.A (Class 5)

**Classification:**      Class 5 consists of the claim held by First Citizens Bank & Trust Company f/k/a CIT Bank, N.A.

**Treatment:**   First Citizens Bank & Trust Company f/k/a CIT Bank, N.A shall have an allowed secured claim for $3,000.00 and a general unsecured claim for $118,614.04.  As to the First Citizens Bank & Trust Company f/k/a CIT Bank, N.A.'s secured claim, the Debtor shall pay $3,000.00 on the 60th day after the Effective Date, unless, within 45 days of the Effective Date, First Citizens Bank sends notice to the Debtor in writing that it would elects instead to obtain the return of the First Citizens Bank Collateral.  If First Citizens Bank & Trust Company f/k/a CIT Bank, N.A timely provides such notice, the Debtor will surrender the First Citizens Bank Collateral to First Citizens Bank & Trust Company f/k/a CIT Bank, N.A.  The Debtor shall not

be require to pay any cost to return the First Citizen Bank collateral.  The unsecured portion of the First Citizens Bank & Trust Company f/k/a CIT Bank, N.A's claim shall be treated as a Class 13 general unsecured claim.

To the extent of the amount of its allowed secured claim, the lien of First Citizens Bank & Trust Company f/k/a CIT Bank, N.A on the Debtor's assets described as "1 Kyocera 3252 copier s.n. W2R6600435 1 Kyocera 3252 copier s.n. W2R8108042 1 Kyocera 3253 copier s.n. H41802970 3 Fax system 3 Print system w interface kit 3 Copier Stand 3 Productivity package 3 Sequence compose 3 Document processor" (the "First Citizens Bank Collateral") shall be preserved, to the same extent it existed prior to Confirmation.  Class 5 is impaired under this Plan and, therefore, Holders of Class 5 Claims are entitled to vote to accept or reject this Plan.

First Citizens Bank & Trust Company f/k/a CIT Bank, N.A**.'s** claim will be discharged upon confirmation if this Plan is confirmed pursuant to 11 U.S.C. § 1191(a) and upon completion of the Plan if this Plan is confirmed pursuant to 11 U.S.C. § 1191(b).

**4.06 Claim held by U.S. Bank, N.A. d/b/a U.S. Bank Equipment Finance (Class 6)**

**Classification:**        Class 6 consists of the claim held by U.S. Bank, N.A. d/b/a U.S. Bank Equipment Finance.

**Treatment:**      U.S. Bank, N.A. d/b/a U.S. Bank Equipment Finance shall have an allowed secured claim for $3,000.00 and a general unsecured claim for $143,926.52.  As to U.S. Bank, N.A. d/b/a U.S. Bank Equipment Finance's secured claim, the Debtor shall pay $3,000.00 on the 60th day after the Effective Date, unless, within 45 days of the Effective Date, U.S. Bank, N.A. d/b/a U.S. Bank Equipment Finance sends notice to the Debtor in writing that it elects instead to obtain the return of the U.S. Bank Collateral.  U.S. Bank, N.A. d/b/a U.S. Bank Equipment Finance timely provides such notice, the Debtor will surrender the U.S. Bank Collateral to U.S. Bank, N.A. d/b/a U.S. Bank Equipment Finance The Debtor shall not be required to pay any cost to return the U.S. Bank collateral.  The unsecured portion of U.S. Bank, N.A. d/b/a U.S. Bank Equipment Finance's claim shall be treated as a Class 13 general unsecured claim.

To the extent of the amount of its allowed secured claim, the lien of U.S. Bank, N.A. d/b/a U.S. Bank Equipment Finance on the Debtor's assets described as "a. One (1) Kyocera 3252 copier, SN W2R6600435; b. One (1) Kyocera 3252 copier, SN W2R8108042; c. One (1) Kyocera 3253 copier, SN RH41802970; d. Three (3) Fax System; e. Three (3) Print System with Interface Kit; f. Three (3) Copier Stand; g. Three (3) Productivity Package; h. Three (3) Sequence Compose; i. Three (3) Document Processor; and j. Three (3) EFI Color Profiler Suite V4" (the "U.S. Bank Collateral") shall be preserved, to the same extent it existed prior to Confirmation and as modified by this Court's orders approving post-petition financing.  Class 6 is impaired under this Plan and, therefore, Holders of Class 6 Claims are entitled to vote to accept or reject this Plan.

U.S. Bank, N.A. d/b/a U.S. Bank Equipment Finance**'s** claim will be discharged upon

confirmation if this Plan is confirmed pursuant to 11 U.S.C. § 1191(a) and upon completion of
the Plan if this Plan is confirmed pursuant to 11 U.S.C. § 1191(b).

### 4.07 Claim held by Xerox Financial Services LLC (Class 7)

**Classification:**          Class 7 consists of the claim held by Xerox Financial Services LLC

**Treatment:**    Xerox Financial Services LLC shall have an allowed secured claim for $3,000.00
and a general unsecured claim for $173,320.00.  As to Xerox Financial Services LLC's secured
claim, the Debtor shall pay $3,000.00 on the 60th day after the Effective Date, unless, within 45
days of the Effective Date, Xerox Financial Services LLC sends notice to the Debtor in writing
that it elects instead to obtain the return of the Xerox Collateral.  If Xerox Financial Services
LLC timely provides such notice, the Debtor will surrender the Xerox Collateral to Xerox
Financial Services LLC.  The Debtor shall not be required to pay any cost to return the Xerox
collateral.  The unsecured portion of the Xerox Financial Services LLC's claim shall be treated
as a Class 13 general unsecured claim.

To the extent of the amount of its allowed secured claim, the lien of Xerox Financial Services
LLC on the Debtor's assets known as "One - New Kyocera 6052 ci139720 , One - New Kyocera
6052 ci139721 , One - New Kyocera 6052 ci139722 , together with all attachments, accessories,
replacements, replacement parts, substitutions, additions, proceeds and repairs thereto" (the
"Xerox Collateral") shall be preserved, to the same extent it existed prior to Confirmation and as
modified by this Court's orders approving post-petition financing.  Class 7 is impaired under this
Plan and, therefore, Holders of Class 7 Claims are entitled to vote to accept or reject this Plan.

Xerox Financial Services LLC**'s** claim will be discharged upon confirmation if this Plan is
confirmed pursuant to 11 U.S.C. § 1191(a) and upon completion of the Plan if this Plan is
confirmed pursuant to 11 U.S.C. § 1191(b).

### 4.08 Claim held by Hewlett-Packard Financial Services Company (Class 8)

**Classification:**          Class 8 consists of the claim held by Hewlett-Packard Financial Services
Company

**Treatment:**    Hewlett-Packard Financial Services Company shall have an allowed secured
claim for $2,000.00 and a general unsecured claim for $99,203.04.  As to Hewlett-Packard
Financial Services Company's secured claim, the Debtor shall pay $3,000.00 on the 60th day
after the Effective Date, unless, within 45 days of the Effective Date, Hewlett-Packard Financial
Services Company sends notice to the Debtor in writing that it elects instead to obtain the return
of the Hewlett-Packard Collateral.  If Hewlett-Packard Financial Services Company timely
provides such notice, the Debtor will surrender the Hewlett-Packard Collateral to Hewlett-
Packard Financial Services Company.  The Debtor shall not be required to pay any cost to return
the Hewlett-Packard Collateral.  The unsecured portion of the Hewlett-Packard Financial

Services Company's claim shall be treated as a Class 13 general unsecured claim.

To the extent of the amount of its allowed secured claim, the lien of Hewlett-Packard Financial Services Company on the Debtor's assets known as "2 Kyocera 4052 copier/printers and related software" (the "Hewlett-Packard Collateral") shall be preserved, to the same extent it existed prior to Confirmation and as modified by this Court's orders approving post-petition financing.  Class 8 is impaired under this Plan and, therefore, Holders of Class 8 Claims are entitled to vote to accept or reject this Plan.

Hewlett-Packard Financial Services Company**'s** claim will be discharged upon confirmation if this Plan is confirmed pursuant to 11 U.S.C. § 1191(a) and upon completion of the Plan if this Plan is confirmed pursuant to 11 U.S.C. § 1191(b).

**4.09 Claims held by Ford Motor Credit Company (Class 9a-9e)**

**<u>Classification:</u>**       Class 9a-9e consists of the claim held by Ford Motor Credit Company

**<u>Treatment:</u>**    For each of its claims, Ford Motor Credit Company shall have an allowed fully secured claim, as set forth below, subject to any reduction of principal that occurs.

| Class | Claim No. | Collateral | Amount Owed (as of March 1, 2023) |
|---|---|---|---|
| 9A | 1 | 2018 Ford Transit 350 VIN 1FDZX2CM8JKB15850 | $8,277.50 |
| 9B | 2 | 2019 Ford Transit 350 VIN 1FDZX2CM8KKA24482 | $10,718.09 |
| 9C | 3 | 2019 Ford Commercial Van VIN 1FDZK1CM7KKA24465 | $10,080.11 |
| 9D | 4 | 2018 Ford Transit VIN 1FMZK1CM1JKB15844 | $9,926.43 |
| 9E | 5 | 2018 Ford Transit 350 VIN 1FDZX2CMXJKB15848 | $8,346.04 |

Any arrearages owed to Ford Motor Credit Company shall be paid within 60 days of the Effective Date.  The Debtor will make regular monthly payments to Ford Motor Credit Company as required each individual contract.

The lien of Ford Motor Credit Company shall be preserved (but not cross-collateralized or cross defaulted), to the same extent it existed prior to Confirmation.  Classes 9a-e are impaired under

this Plan and, therefore, Holders of Class 9a-9e Claims are entitled to vote to accept or reject this Plan.

The Debtor will maintain commercially reasonably insurance on all of the above listed collateral.

Ford Motor Credit Company's claims will be discharged upon confirmation if this Plan is confirmed pursuant to 11 U.S.C. § 1191(a) and upon completion of the Plan if this Plan is confirmed pursuant to 11 U.S.C. § 1191(b).

**4.10 Claims held by Santander Consumer USA, Inc. (Class 10a-10e)**

**Classification:**    Class 10a-10e consists of the claim held by Santander Consumer USA, Inc.

**Treatment:**    For each of its claims, Santander Consumer USA, Inc. shall have an allowed fully secured claim, as set forth below, subject to any reduction of principal that occurs.

| Class | Claim No. | Collateral | Amount Owed (as of March 1, 2023) |
|---|---|---|---|
| 10a | 1 | 2019 Dodge Grand Caravan 2C7WDGBG8KR538524 | $14,283.32 |
| 10b | 2 | 2019 Dodge Grand Caravan 2C7WDGBG9KR526950 | $14,283.31 |
| 10c | 3 | 2019 Dodge Grand Caravan 2C7WDGBG4KR538603 | $14,288.43 |
| 10d | 4 | 2019 Dodge Grand Caravan 2C7WDGBG7KR538658 | $14,283.31 |
| 10e | 5 | 2019 Dodge Grand Caravan 2C7WDGBG1KR538655 | $14,283.32 |

Any arrearages owed to Santander Consumer USA, Inc. shall be paid within 60 days of the Effective Date.  The Debtor will make regular monthly payments to Santander Consumer USA, Inc. as required each individual contract.

The lien of Santander Consumer USA, Inc. shall be preserved (but not cross-collateralized or cross defaulted), to the same extent it existed prior to Confirmation.  Classes 10a-10e are impaired under this Plan and, therefore, Holders of Class 10a-10e  Claims are entitled to vote to

accept or reject this Plan.

The Debtor will maintain commercially reasonably insurance on all of the above listed collateral.

Automotive Credit Corporation's claims will be discharged upon confirmation if this Plan is confirmed pursuant to 11 U.S.C. § 1191(a) and upon completion of the Plan if this Plan is confirmed pursuant to 11 U.S.C. § 1191(b).

### 4.11 Claims held by Enterprise FM Trust & Enterprise Fleet Management, Inc. (Class 11)

**Classification:**        Class 11 consists of the claim held by Enterprise FM Trust and Enterprise Fleet Management, Inc. (collectively, "Enterprise")

**Treatment:**    Enterprise shall have an allowed secured claim for all amounts due under its Master Equity Lease.

Enterprise shall be deemed to have a lien on the vehicles listed on **Exhibit A, part 2** as being financed by Enterprise (the "Enterprise Vehicles").   Enterprise shall be paid as follows:

First, on the Effective Date, Enterprise shall be allowed to apply the $40,000 deposit it is holding as a deposit.

Second, within five business days of the Effective Date, Enterprise shall be paid $151,492.74, or such lesser amount that is then due to them under the Master Equity Lease.

Third, within five business days of the Effective Date, Enterprise shall be paid $400 per vehicles in exchange for title to the Enterprise Vehicles.

The Debtor will maintain commercially reasonably insurance on all of the above listed collateral until Enterprise is paid in full.

Enterprise's claims will be discharged upon confirmation if this Plan is confirmed pursuant to 11 U.S.C. § 1191(a) and upon completion of the Plan if this Plan is confirmed pursuant to 11 U.S.C. § 1191(b).

### 4.12 Claims held by Automotive Credit Corporation (Class 12a-12d)

**Classification:**        Class 12a-12d consists of the claims held by Automotive Credit Corporation

**Treatment:**    For each of its claims, Automotive Credit Corporation shall have an allowed fully secured claim, as set forth below, subject to any reduction of principal that occurs.

| Class | Collateral | Amount Owed (as of March 1, 2023) |
|---|---|---|
| 12a | 2017 Grand Caravan ending in 5245 | $6,832.30 |
| 12b | 2017 Dodge Caravan with VIN ending in 5319 | $5,442.97 |
| 12c | 2017 Dodge Grand Caravan with VIN ending in 8324 | $6,670.12 |
| 12d | 2017 Dodge Grand Caravan wtih VIN ending in 5266 | $6,779.20 |

Any arrearages owed to Automotive Credit Corporation shall be paid within 60 days of the Effective Date.  The Debtor will make regular monthly payments to Automotive Credit Corporation as required each individual contract.

The lien of Automotive Credit Corporation shall be preserved (but not cross-collateralized or cross defaulted), to the same extent it existed prior to Confirmation.  Classes 12a-12d are impaired under this Plan and, therefore, Holders of Class 12a-12d Claims are entitled to vote to accept or reject this Plan.

The Debtor will maintain commercially reasonably insurance on all of the above listed collateral.

Automotive Credit Corporation's claims will be discharged upon confirmation if this Plan is confirmed pursuant to 11 U.S.C. § 1191(a) and upon completion of the Plan if this Plan is confirmed pursuant to 11 U.S.C. § 1191(b).

**4.13 Classification and Treatment of Unsecured Claims (Class 13)**

**Classification:**        Class 13 consists of all General Unsecured Claims.

**Treatment:**    Provided that an Allowed Class 13 Claim has not been paid prior to the Effective Date, or pursuant to a cure payment to be paid to assume an executory contract, and except to the extent that a holder of a Class 13 Claim agrees to a different and lesser treatment, each holder of an Allowed Class 13 Claim shall receive from the Debtor, in full and complete settlement, satisfaction and discharge of its Allowed Class 13 Claim, a pro rata portion of the Quarterly Payments and Quarterly Avoidance Action Proceeds (each such pro rata share to be paid after payment of the commission incurred by the Trustee, if any).  Class 13 is impaired under this Plan and, therefore, Holders of Class 13 Claims are entitled to vote to accept or reject this Plan.

Class 13 claims will be discharged upon confirmation if this Plan is confirmed pursuant to 11 U.S.C. § 1191(a) and upon completion of the Plan if this Plan is confirmed pursuant to 11 U.S.C.

§ 1191(b).  To the extent any Class 13 Claim is deemed to be a Non-Dischargeable Claim, it will be paid in full, with interest at the federal judgment rate in effect on the Confirmation Date, in equal quarterly payments, over a period not to exceed five years, beginning on the first day of the quarter immediately after the last Quarterly Payment is made.

.
**4.14 Classification and Treatment of Equity Interests**

**Classification:**        Class 14 consists of the equity interests in the Debtor.

**Treatment:**    The holders of the equity interest in the Debtor, Kelvin Smith shall retain his 100% equity interest the Debtor.  Holders of equity interests in the Debtor are unimpaired and not entitled to vote on the Plan.

## ARTICLE V – ALLOWANCE OF DISALLOWANCE OF CLAIMS

### 5.01. No Distributions With Respect to Disputed Claims

Notwithstanding any other Plan provision, Distributions will be made on account of a Disputed Claim only after, and only to the extent that, the Disputed Claim becomes an Allowed Claim, **provided, however**, that if the only dispute regarding a Disputed Claim is to the amount of the Disputed Claim, the Holder of a Disputed Claim shall be entitled to receive a Distribution on account of that portion of the Disputed Claim, if any, which the Debtor does not dispute, which Distribution shall be made by the Debtor at the same time and in the same manner that such Debtor makes Distribution to Holders of similar Allowed Claims pursuant to the provisions of the Plan.  The Debtor may, in its discretion, withhold Distributions otherwise due and payable by the Debtor hereunder to any applicable Holder of a Claim until the Claims Objection Deadline, to enable a timely objection thereto to be filed. A Claim of any Person from which property may be recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer that may be avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be a Disallowed Claim unless and until the Person or transferee has paid the amount or turned over the property for which such Person or transferee is liable. Any Holder of a Claim that becomes an Allowed Claim after the Effective Date will receive its Distribution in accordance with the terms and provisions of this Plan.

## ARTICLE VI – EXECUTORY CONTRACTS

**6.01    Assumption and Rejection of Executory Contracts and Unexpired Leases:** Except as otherwise provided in the Confirmation Order, this Plan, or any other Plan Document, on the Effective Date, the Debtor will be deemed to have rejected any and all other Executory Contracts or unexpired leases under Bankruptcy Code section 365.  **Notwithstanding the foregoing, the contracts listed on Exhibit I, shall be deemed assumed as of the Effective**

28

**Date, without necessity of any cure payment, unless otherwise stated. In the event any counterparty to an Executory Contract asserts a larger cure payment is due, the Debtor shall make the payment(s) listed on Exhibit I, and reserve sufficient funds to pay the disputed portion of the asserted cure payment.** Between the Confirmation Date and the Effective Date, the Debtor may add Executory Contracts it wishes to assume by filing a notice and serving said notice on the counterparty to the Executory Contract it wishes to assume, with notice of any proposed cure amount. The counterparty to the added Executory Contract shall have thirty days to object to assumption, after which, if no objection has been filed, the added Executory Contract will be deemed assumed. If an objection is filed, the Bankruptcy Court shall adjudicate the objection.

**6.02    Bar Date for Rejection Damage Claims**    Any Rejection Damage Claims arising from the rejection under the Plan of an executory contract or an unexpired lease must be filed with the Court and served on the Debtor and their counsel within thirty (30) days after the Effective Date. Any Rejection Damage Claims that are not timely filed and served will be forever barred and unenforceable and the Persons holding these Claims will be barred from receiving any Distributions under the Plan on account of their Rejection Damage Claims. The Debtor reserves the right to object to any such Rejection Damage Claims; provided, however, that any such objections must be served and filed not later than 30 days after such claim is filed.

## ARTICLE VII- PLAN IMPLEMENTATION

**7.01    Revesting of Property:** All property of the Estate shall revest in the Debtor on the Effective Date, free and clear of all other liens, claims, interests and encumbrances, except for the liens specifically preserved or created by this Plan.

**7.02    Quarterly Payments:** Beginning on the first business day that is in the first full quarter after the Effective Date, and continuing on the first business day of each quarter thereafter for a total of twelve (12) quarters, the Debtor, or, if this Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the Trustee (from payments made to the Trustee by the Debtor), shall pay Quarterly Payments of $60,000.00 (the "Quarterly Payments") plus the Quarterly Avoidance Action Proceeds *pro rata* to holders of General Unsecured Claims. Should the Court determine that more Quarterly Payments are necessary to satisfy 11 U.S.C. § 1129, the Debtor shall make such additional subsequent quarterly payments as are necessary to deem such section satisfied. The Quarterly Payments shall be reduced by any amounts the Debtor spends to defend an asserted Non-Dischargeable Claim.

**7.03    Compensation of SubChapter V Trustee:** If this Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the SubChapter V Trustee shall be entitled to pay himself a 3%

commission out of all distributions made, and shall be entitled to payment of any reasonable attorneys fees he incurs, upon reasonable notice to the Debtor.  If the Debtor objects to any of said attorneys' fees, the Bankruptcy Court shall have exclusive jurisdiction to resolve any dispute related thereto.

If this Plan is confirmed pursuant to 11 U.S.C. § 1191(a), the SubChapter V Trustee shall be paid any and all Professional Fees on the later of the Effective Date and date of the allowance of such Professional Fees.

**7.04     Remedies:**  In the event the Debtor defaults under this Plan, the Trustee or any Creditor or holder of an Administrative Expense Claim seeking to enforce their rights under this Plan shall provide notice of such default to the Debtor.  If such default is not cured within 28 days of said notice, the party providing notice of such default may seek conversion to Chapter 7 or the appointment of a Chapter 11 Trustee, who may, in their discretion sell any and all of the Debtor's assets, or may seek relief from any stay or injunction pursuant to § 9.03 of this Plan.

**7.05     Transfer Tax:** Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any notes or securities under the Plan, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, deeds of trust, mortgages, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, or shall not be subject to any stamp tax or other similar tax.

**7.06     Undeliverable distributions**: Distributions to Persons holding Allowed Claims will initially be made by mail as follows: 1. Distributions will be sent to the address, if any, set forth on a filed proof of claim as amended by any written notice of address change received by the Debtor; or 2) If no such address is available, Distributions will be sent to the address set forth on the Bankruptcy Schedules. If no address is available either on a proof of claim or on the Bankruptcy Schedules, the Distribution will be deemed to be undeliverable. If a Distribution is returned to the Debtor as an undeliverable Distribution or is deemed to be an undeliverable Distribution, the Debtor will make no further Distribution to the Person holding the Claim on which the Distribution is being made unless and until the Debtor are timely notified in writing of that Person's current address.  Subject to the following paragraph, until they become deliverable, the Debtor may, in its discretion, create a Plan Reserve for undeliverable Distributions for the benefit of the Persons entitled to the Distributions.  These Persons will not be entitled to any interest on account of the undeliverable Distributions.  Any Person that is otherwise entitled to an undeliverable Distribution and that does not, within the later of six months after the Effective Date, or sixty (60) days after a Distribution is returned to the Debtor as undeliverable, or is deemed to

30

be an undeliverable Distribution, provide the Debtor with a written notice asserting its claim to or interest in that undeliverable Distribution and setting forth a current, deliverable address will be deemed to waive any claim to or interest in that undeliverable Distribution and will be forever barred from receiving that undeliverable Distribution or asserting any Claim related thereto against the Debtor and the Estate.  Nothing in the Plan requires the Debtor to attempt to locate any Person holding an Allowed Claim and whose Distribution is undeliverable.

**7.07      Post-Effective Date Rights and Obligations**: From and after the Effective Date of this Plan, the Debtor shall be free to, in a manner not inconsistent with this Plan or any Order issued by the United States Bankruptcy Court, (1) pay Post-Effective Date Expenses without restriction, (2) to use, sell or otherwise dispose of its Assets, or (3) obtain unsecured financing or junior financing secured by its Assets; and (4) refinance any secured debt; (5) settle any Causes of Action, including but not limited to, Avoidance Actions; and (6) prepay any claims entitled to payment under this Plan, so long as all claims in any class are prepaid equally.  The Debtor shall not be required to maintain a Debtor-In-Possession Account after the Effective Date of the Plan.  After the Effective Date of the Plan, the Debtor shall not be required to file Post-Confirmation Quarterly Reports.

**7.08      Preservation of Causes of Action and Defenses:** Unless expressly waived, released or settled in the Plan or any Final Order, the Debtor shall retain, and may exclusively enforce, any and all claims, rights, defenses and Causes of Action (including without limitation, claims, rights, defenses and Causes of Action not specifically identified, or which the Debtor may presently be unaware of, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor, at this time, or facts or circumstances which may change or be different from those which the Debtor believes to exist), whether arising before or after the Petition Date, in any court or tribunal, including but not limited to the Bankruptcy Court.  The Debtor will be authorized to exercise and perform the rights, powers and duties held by the Debtor's Estate, including without limitation the authority under Bankruptcy Code section 1123(b)(3) to provide for the settlement, adjustment, retention and enforcement of claims, rights, defenses and Causes of Action. The Debtor shall further have the power, and may exercise discretion, to institute, prosecute, abandon, settle, or compromise any and all such claims, rights, defenses and Causes of Action, and shall not be required to seek Bankruptcy Court approval of such decisions.

**7.09      Preclusion Doctrines:**  No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such claims, rights, defenses or Causes of Action upon, or after, the Confirmation or consummation of the Plan based on the the Plan, or the Confirmation Order, except where such claims, rights, defenses

or Causes of Action have been specifically released in the Plan or other Final Order.  No precaution doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall prevent the Debtor from objecting to any Claim, except where such Claim is specifically allowed in the Plan or other Final Order.  No one may rely on the absence of a specific reference in the Plan to any claim, right, defense or Cause of Action against them as an indication that the Debtor will not pursue any and all available claims, rights, defenses, or Causes of Action against them.  The Confirmation Order shall not bar the Debtor by res judicata, collateral estoppel, or otherwise from collecting, prosecuting, settling, or defending any claim, right, defense, or Cause(s) of Action.

**7.10** **Retention of Professionals:** On the Effective Date, the Debtor shall be allowed, without further order of the Bankruptcy Court, to employ and compensate professionals, including, but not limited to, counsel, expert witnesses, accountants, appraisers, brokers, consultants, and financial advisors, as needed to assist it in fulfilling its obligations under the Plan, and on whatever fee arrangement it deems appropriate, including, without limitation, hourly fee arrangements and contingency fee arrangements.  Professionals engaged by the Debtor after the Effective Date shall not be required to file applications for compensation in order to receive the compensation provided for herein.  Notwithstanding the foregoing, if the Debtor has any objection to a request for compensation submitted to them by a Professional, the Debtor and/or the Professional which has submitted the application may file a motion with the Bankruptcy Court to decide the matter.

**7.11** **Post-Confirmation Management of the Debtor:**  After confirmation, Kelvin Smith shall remain the president, sole shareholder, and chief executive officer of the Debtor. The Debtor will continue to employ or engage with various relatives of Mr. Smith, at the salaries set forth on **Exhibit H**, subject to annual increase of not more than 15%.  The Debtor does not anticipate the appointment of new officers, directors, or voting trustees.  Mr. Smith shall be paid not more than $160,000 per annum during the life of this Plan, subject to annual increase of not more than 5%.

## <u>ARTICLE VIII – GENERAL PROVISIONS</u>

**8.01 Definitions and rules of construction:** The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, as supplemented by the definitions listed above.

1.      Except as otherwise provided in the Plan, Bankruptcy Rule 9006(a) applies when computing any time period under the Plan. If any payment or act under the Plan should be required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

2.      A capitalized term that is used in this Plan and that is not defined in this Plan has the meaning attributed to that term, if any, in the Bankruptcy Code or the Bankruptcy Rules.

3.      The definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Bankruptcy Code, the Bankruptcy Rules or the Disclosure Statement.

4.      Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.

5.      Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms.

6.      Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

7.      Unless otherwise indicated, the phrase "in the Plan," "in this Plan," "under the Plan," "under this Plan," and similar words or phrases refer to this Plan in its entirety rather than to only a portion of the Plan.

8.      Unless otherwise specified, all references to Articles or Exhibits are references to this Plan's Articles or Exhibits.

9.      Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) and except as otherwise provided herein or therein, the laws of (i) the Commonwealth of Virginia shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan.

10.     All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein.

**8.02. Effective Date:** The effective date (the "Effective Date") of this Plan is the first business day following the date that is 14 days after the entry of the Confirmation Order. If, however, a stay of the Confirmation Order is in effect on that date, the effective date will be the first

business day after the date on which the stay expires or is otherwise terminated.  For the avoidance of doubt, an appeal of the Confirmation Order, absent entry of a stay pending appeal, will not delay the Effective Date.  The debtor shall file a notice of the Effective Date on the Effective Date but shall not be required to serve said notice, other than through CM/ECF.  It is anticipated that the Effective Date will be June 8, 2023.

**8.03  Severability:** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**8.04: Binding effect**: The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**8.05 Captions**: Article captions and headings are used only as convenient references and do not affect this Plan's meaning.

**8.06 Controlling effect:** Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the Commonwealth of Virginia govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**8.07 Retention of jurisdiction:**  Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order, substantial consummation of this Plan and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Case, this Plan and the Plan Documents to the fullest extent permitted by law, including, among other things, jurisdiction to:

    **a.**  Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim, the resolution of any objections to the allowance or priority of Claims or Interests and the determination of requests for the payment of claims entitled to priority under Bankruptcy Code section 507(a)(2), including compensation of any reimbursement of expenses of parties entitled thereto;

    **b.**  Hear and determine all applications for compensation and reimbursement of expenses of the Trustee and Professionals under this Plan or under Bankruptcy Code sections 330, 331, 503(b), 1103, and 1129(a)(4); provided, however, that from and after the Effective Date, the retention and payment of the fees and expenses of the Professionals of the Debtor may be made in the ordinary course of business without the approval of the Bankruptcy Court;

    **c.**   Hear and determine all matters with respect to the assumption or rejection of any Executory Contract or unexpired lease with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

    **d.**   Effectuate performance of and payments under the provisions of this Plan;

    **e.**   Hear and determine any and all adversary proceedings, motions, applications and contested or litigated matters arising out of, under or related to the Case, this Plan, or any Plan Document;

    **f.**   Enter such orders as may be necessary or appropriate to execute, implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan or the Confirmation Order;

    **g.**   Hear and determine disputes arising in connection with the interpretation, implementation, consummation or enforcement of this Plan, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

    **h.**   Consider any modifications of this Plan, cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

    **i.**   Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, consummation, or enforcement of this Plan or the Confirmation Order;

    **j.**   Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified or vacated;

    **k.**   Hear and determine any matters arising in connection with or relating to this Plan, the Confirmation Order, the Plan Documents or any contract, instrument, release or other agreement or document created in connection with this Plan, the Confirmation Order, or any Plan Document;

    **l.**    Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Case;

    **m.**    Except as otherwise limited herein, recover all Assets of the Debtor and property of the Estate, wherever located;

    **n.**    Hear and determine matters concerning state, local and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

    **o.**    Hear and determine motions for Bankruptcy Rule 2004 examinations;

    **p.**    Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

    **q.**    Hear and determine any Causes of Action;

    **r.**    Hear and determine all disputes involving the existence, nature or scope of the injunctions, indemnification, exculpation and releases granted pursuant to this Plan;

    **s.**    Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

    **t.**    Enforce all orders previously entered by the Bankruptcy Court;

    **u.**    Dismiss the Case; and

    **v.**    Enter a final decree closing the Case.

If the Bankruptcy Court abstains from exercising jurisdiction, or is without jurisdiction, over any matter, this Article will not affect, control, prohibit, or limit the exercise of jurisdiction by any other court that has jurisdiction over that matter.

8.08 **Impaired Classes to Vote:** To the extent the Court determines any Creditor is impaired, each Holder of a Claim in an impaired Class shall be entitled to vote separately to accept or reject the Plan unless such Holder is deemed to reject the Plan.

8.09 **Acceptance by Class of Creditors:** An impaired Class of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject

the Plan. A Class of Claims shall be deemed to accept the Plan in the event that no Holder of a Claim within that Class submits a Ballot by the Ballot Date.

8.10 **Elimination of Classes:** Any Class that does not contain any Allowed Claims or Interests, or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of commencement of the Confirmation Hearing, shall be deemed to have been deleted from the Plan for purposes of (a) voting to accept or reject the Plan and (b) determining whether it has accepted or rejected the Plan under section 1129(a)(8) of the Bankruptcy Code.

8.11 **Cramdown:** In the event that any impaired Class of Claims shall fail to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with section 1191(b) of the Bankruptcy Code or amend the Plan in accordance with section 1127(a) of the Bankruptcy Code.

8.12 **Distribution of Property Under the Plan**

8.12.1 **Manner of Cash Payments:** Cash payments to domestic entities holding Allowed Claims will be denominated in U.S. dollars and will be made by checks drawn on a domestic bank or by wire transfer from a domestic bank.

8.12.2 **Setoff and Recoupment:** Notwithstanding anything to the contrary in this Plan, the Debtor may set off, recoup, or withhold against the Distributions to be made on account of any Allowed Claim any claims that the Debtor or the Estate may have against the claimant or the Person holding the Allowed Claim. The Debtor does not waive or release, and shall not be deemed to waive or release, any claim against those Persons by failing to effect such a setoff or recoupment, by the allowance of any claim against the Debtor or the Estate, or by making a Distribution on account of an Allowed Claim. In addition, the settlement or adjudication of any Avoidance Action shall not bar the Debtor from filing a subsequent objection to Claim. The Debtor may assert all of the same rights and defenses, including all setoff rights and rights under Section 502(d) of the Bankruptcy Code, with respect to any Claim held by an Assignee of a Claim as it could against the original Holder of the Claim.

8.12.3 **Interest on Claims:** Unless otherwise specifically provided for in this Plan, the Confirmation Order, any order of this Court, or required by applicable bankruptcy law, Post-Petition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date.

8.12.4 **Withholding and Reporting Requirements** In connection with this Plan and all

37

Distributions under this Plan, the Debtor shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding, payment, and reporting requirements.   The Debtor shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment and reporting requirements.  All amounts properly withheld from Distributions to a Holder as required by applicable law and paid over to the applicable taxing authority for the account of such Holder shall be treated as part of the Distributions to such Holder.  All Holders shall be required to provide any information necessary to effect information reporting and withholding of such taxes, including but not limited to taxpayer identification numbers. Notwithstanding any other provision of this Plan, each Holder of an Allowed Claim that is to receive a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution.  The Debtor may require any Creditor to provide a completed form W-8 or W-9 IRS tax form or otherwise furnish to the Debtor its tax identification number as assigned by the IRS and the Debtor may condition any distribution to any Creditor upon receipt of such tax identification number.

8.13**: Indemnification Obligations**: Except as otherwise provided in this Plan or any contract, instrument, release, or other agreement or document entered into in connection with this Plan, any and all indemnification obligations that the Debtor has pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document or any other document, or applicable law, shall be rejected as of the Effective Date, to the extent executory.  Nothing in this Plan shall be deemed to release the Debtor's insurers from any claims that might be asserted by counter-parties to contracts or agreements providing the indemnification by and of the Debtor, to the extent of available coverage.

8.14: **No admissions** Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed, is revoked, or otherwise the Effective Date does not occur, the Plan will be null and void, and nothing contained in the Plan will: (a) be deemed to be an admission by the Debtor with respect to any matter discussed in the Plan, including liability on any Claim or the propriety of any Claim's classification; (b) constitute a waiver, acknowledgement, or release of any Claims, Interests, or any Causes of Action held by the Debtor or the Estate; or (c) prejudice in any manner the rights of the Debtor, the Estate, or any Creditors or Interest Holders in any further proceedings.

## ARTICLE IX – INJUNCTION AND DISCHARGE

**9.01 Pre-Discharge Injunction:  Unless otherwise provided herein or the Confirmation Order, all injunctions or stays provided for in the Case pursuant to sections 105, 362 or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date.**

**As of the Effective Date, all Persons that have held, hold, or may hold Claims (including, but not limited to, Administrative Expense Claims) will be enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on account of any such Claim, Administrative Expense Claim against the Trustee, the Debtor, and their Professionals, successors and assigns (the "Estate Parties"), including, but not limited to, any Claims, Administrative Expense Claims based upon any act or omission, transaction, or other activity of any kind, type or nature that occurred in connection with the Case prior to the Confirmation Date; (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Estate Parties arising from any matter related to the Case; (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Estate Parties or against the property, or interests in property, of the Estate Parties with respect to any such Claims (including, but not limited to, Administrative Expense Claims); and (iv) asserting any defense or right of setoff, subrogation, or recoupment of any kind against any obligation due from the Estate Parties or against the property, or interests in property, of the Estate Parties with respect to any such Claim (including, but not limited to, Administrative Expense Claims) until entry of the Discharge, (as described below), except said injunction against commencing or continuing in any manner any action or other proceeding of any kind on account of any Claim, Administrative Expense Claim as to Estate Parties  based on any act or omission, transaction, or other activity of any kind, type or nature that occurred in connection with the Case prior to the Confirmation Date, shall continue after discharge, and as to any Non-Dischargeable Claim, shall continue so long as the Debtor is making payment to the holder of the Non-Dischargeable Claim during the extended period provided by the Plan.**

**9.02: Discharge: If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date, the Debtor will be discharged from any debt, including any Non-Dischargeable Claim, that arose before confirmation of this Plan, to the fullest extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt imposed or preserved by this Plan.**

**If the Debtor's Plan is confirmed under § 1191(b), confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan.  As soon as practicable after completion of all payments due within the first 3 years of this Plan, the Court shall**

discharge the Debtor to the fullest extent specified in § 1141(d)(1)(A) of the Code.  The Debtor will not be discharged from any debt: (i) on which the last payment is due after the day that is 5 years after the Effective Date of the plan; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.  For the avoidance of doubt, it is anticipated that all Claims will be discharged except the Secured Claim of the SBA and non-dischargeable, Priority Tax Claims, both of which will be paid in full.

ANY PARTY SEEKING TO ASSERT THAT IT HAS A NON-DISCHARGEABLE CLAIM PURSUANT TO 11 U.S.C. § 1192(2) AND 11 U.S.C. § 523(a)(2), (4), AND/OR (6) MUST HAVE FILED AN ADVERSARY PROCEEDING ASSERTING SUCH CLAIM BY MARCH 6, 2023, OR HAVE OBTAINED AN EXTENSION TO ASSERT SUCH CLAIM BY MARCH 6, 2023.  ONLY ONE CREDITOR, GEORGE GOATES, HAS OBTAINED SUCH AN EXTENSION.

9.03: Default: Should the Debtor default under the Plan while the automatic stay or any injunction, including the discharge injunction, under this Plan remains in effect, any affected Creditor or holder of an Administrative Expense Claim shall file a Notice of Default and shall mail a copy of the Notice of Default to the Debtor and serve Debtor's attorney.  The Debtor shall have 28 days to cure the default.  In the event that the default is not cured, the affected Creditor or holder of an Administrative Expense Claim may file a motion for relief from the automatic stay or injunction in order to be entitled to assert all rights available to it under state law against the Debtor or property of the Debtor's estate, or may file a motion to convert the Debtor's case to Chapter 7 or for the appointment of a Chapter 11 trustee.  The automatic stay and any applicable injunction under this Plan shall remain in effect until the dispute is adjudicated.

Dated:  March 21, 2023                          Respectfully submitted,

                                                /s/ Justin Fasano
                                                Justin Fasano (Bar No. 75983)
                                                Steven L. Goldberg (admitted pro hac vice)
                                                McNamee Hosea, P.A.
                                                6411 Ivy Lane, Suite 200
                                                Greenbelt, Maryland  20770
                                                Telephone: (301) 441-2420
                                                Facsimile: (301) 982-9450
                                                jfasano@mhlawyers.com/ sgoldberg@mhlawyers.com
                                                *Attorneys for the Debtor*

                                                /s/ Kelvin E. Smith
                                                KTS Solutions, Inc.
                                                by: Kelvin E. Smith, president and chief executive officer

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| In re: | ) | Case No. 22-11694-BFK |
| | ) | (Chapter 11) |
| KTS SOLUTIONS, INC. | ) | |
| | ) | SubChapter V |
| Debtor. | ) | |
| | ) | |

## EXHIBIT A – LIST OF VEHICLES

**PART 1 –Vehicles finance through Santander (Chrysler); Ford and Automotive Credit Corporation**

| No. | Year | Make | Model | Last 4 of VIN | Mileage | Financed? | Lender | Balance | Value |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 2019 | Dodge | Caravan | 8655 | 201,795 | Yes | Chrysler Capital | $ 14,283.32 | $15,000.00 |
| 2 | 2019 | Dodge | Caravan | 8524 | 206,508 | Yes | Chrysler Capital | $ 14,283.31 | $15,000.00 |
| 3 | 2019 | Dodge | Caravan | 6950 | 246,671 | Yes | Chrysler Capital | $ 14,283.31 | $15,000.00 |
| 4 | 2019 | Dodge | Caravan | 8603 | 228,569 | Yes | Chrysler Capital | $ 14,288.43 | $15,000.00 |
| 5 | 2019 | Dodge | Caravan | 8658 | 217,544 | Yes | Chrysler Capital | $ 14,283.31 | $15,000.00 |
| 6 | 2019 | Ford | Transit-150 | 4465 | 166,158 | Yes | Ford Motor Credit | $ 10,080.11 | $15,975.00 |
| 7 | 2018 | Ford | Transit-150 | 5844 | 199,851 | Yes | Ford Motor Credit | $ 9,926.43 | $14,641.50 |
| 8 | 2019 | Ford | Transit-350 | 4482 | 220,551 | Yes | Ford Motor Credit | $ 10,718.09 | $13,650.00 |
| 9 | 2019 | Ford | Transit-350 | 5848 | 150,071 | Yes | Ford Motor Credit | $ 8,346.04 | $13,650.00 |
| 10 | 2018 | Ford | Transit-350 | 5850 | 153,671 | Yes | Ford Motor Credit | $ 8,277.50 | $13,650.00 |
| 19 | 2017 | Dodge | Grand Caravan | 5245 | 266,061 | Yes | Automotive Credit | $ 6,832.30 | $8,400.00 |
| 20 | 2017 | Dodge | Grand Caravan | 5319 | 243,264 | Yes | Automotive Credit | $ 5,442.97 | $8,400.00 |
| 21 | 2017 | Dodge | Grand Caravan | 8324 | 220,646 | Yes | Automotive Credit | $ 6,670.12 | $8,400.00 |
| 22 | 2017 | Dodge | Grand Caravan | 5266 | 258,395 | Yes | Automotive Credit | $ 6,779.20 | $8,400.00 |

**EXHIBIT A, CONTINUED**

## Part 2 – Enterprise and Orange Grove Vehicles

| No. | Year | Make | Model | VIN | Last 4 of VIN | Mileage | Vendor | Value |
|---|---|---|---|---|---|---|---|---|
| 1 | 2018 | Dodge | Grand Caravan | 2C4RDGCGXJR240077 | 0077 | 206,335 | Enterprise | $8,400.00 |
| 2 | 2019 | Dodge | Grand Caravan | 2C7WDGBG4KR801480 | 1480 | 97,055 | Enterprise | $16,575.00 |
| 3 | 2019 | Dodge | Grand Caravan | 2C7WDGBG9KR801491 | 1491 | 99,029 | Enterprise | $17,400.00 |
| 4 | 2019 | Dodge | Grand Caravan | 2C7WDGBG2KR801512 | 1512 | 30,037 | Enterprise | $19,875.75 |
| 5 | 2019 | Dodge | Grand Caravan | 2C7WDGBG5KR641805 | 1805 | 99,011 | Enterprise | $17,400.00 |
| 6 | 2018 | Ford | Transit-150 | 1FMZK1CM2JKA02632 | 2632 | 142,800 | Enterprise | $15,375.00 |
| 7 | 2019 | Dodge | Grand Caravan | 2C7WDGBG1KR803154 | 3154 | 83,802 | Enterprise | $19,050.00 |
| 8 | 2019 | Dodge | Grand Caravan | 2C7WDGBG7KR803191 | 3191 | 103,898 | Enterprise | $12,937.50 |
| 9 | 2018 | Dodge | Grand Caravan | 2C7WDGBG6JR363642 | 3642 | 141,186 | Enterprise | $10,875.00 |
| 10 | 2018 | Ford | Transit 150 | 1FMZK1CM7JKA14372 | 4372 | 131,540 | Enterprise | $15,900.00 |
| 11 | 2017 | Dodge | Grand Caravan | 2C4RDGCG7HR864512 | 4512 | 197,259 | Enterprise | $10,650.00 |
| 12 | 2019 | Dodge | Grand Caravan | 2C7WDGBG7KR641847 | 4847 | 170,021 | Enterprise | $9,900.00 |
| 13 | 2019 | Dodge | Grand Caravan | 2C7WDGBG0KR614849 | 4849 | 178,515 | Enterprise | $10,875.00 |
| 14 | 2019 | Dodge | Grand Caravan | 2C7WDGBG4KR614885 | 4885 | 149,185 | Enterprise | $12,225.00 |
| 15 | 2019 | Dodge | Grand Caravan | 2C7WDGBGXKR614891 | 4891 | 224,917 | Enterprise | $8,924.25 |
| 16 | 2019 | Dodge | Grand Caravan | 2C7WDGBG4KR614897 | 4897 | 124,993 | Enterprise | $13,650.00 |
| 17 | 2019 | Dodge | Grand Caravan | 2C7WDGBG4KR614899 | 4899 | 153,245 | Enterprise | $12,337.50 |
| 18 | 2019 | Dodge | Grand Caravan | 2C7WDGBG9KR614901 | 4901 | 162,084 | Enterprise | $12,168.75 |
| 19 | 2019 | Dodge | Grand Caravan | 2C7WDGBG4KR614918 | 4918 | 210,296 | Enterprise | $9,441.00 |
| 20 | 2019 | Dodge | Grand Caravan | 2C7WDGBG3KR805066 | 5066 | 96,720 | Enterprise | $18,900.00 |
| 21 | 2019 | Dodge | Grand Caravan | 2C7WDGBG7KR805121 | 5121 | 95,686 | Enterprise | $18,900.00 |
| 22 | 2019 | Dodge | Grand Caravan | 2C7WDGBG7KR805135 | 5135 | 108,339 | Enterprise | $14,625.00 |
| 23 | 2018 | Dodge | Grand Caravan | 2C4RDGCG9JR267108 | 7108 | 189,400 | Enterprise | $10,891.50 |
| 24 | 2019 | Dodge | Grand Caravan | 2C7WDGBG5KR678563 | 8563 | 208,691 | Enterprise | $9,825.00 |
| 25 | 2017 | Dodge | Grand Caravan | 2C4RDGBG2HR848588 | 8588 | 187,824 | Enterprise | $12,168.75 |
| 26 | 2017 | Dodge | Grand Caravan | 2C7WDGBG5HR838627 | 8627 | 136,192 | Enterprise | $7,908.00 |
| 27 | 2019 | Dodge | Grand Caravan | 2C7WDGBG5KR678627 | 8627 | 80,614 | Enterprise | $16,575.00 |
| 28 | 2019 | Dodge | Grand Caravan | 2C7WDGBG8KR678637 | 8637 | 203,623 | Enterprise | $10,458.00 |
| 29 | 2019 | Dodge | Grand Caravan | 2C7WDGBG8KR678671 | 8671 | 177,341 | Enterprise | $10,875.00 |
| 30 | 2019 | Dodge | Grand Caravan | 2C7WDGBG3KR698889 | 8889 | 183,188 | Enterprise | $11,916.75 |
| 31 | 2018 | Dodge | Grand Caravan | 2C4RDGCG2JR208918 | 8918 | 284,267 | Enterprise | $10,650.00 |
| 32 | 2017 | Ford | Transit-350 | 1FBZX2CM2HKB49091 | 9091 | 123,713 | Enterprise | $16,875.00 |
| 33 | 2018 | Dodge | Grand Caravan | 2C4RDGCG6JR209442 | 9442 | 119,878 | Enterprise | $11,616.00 |
| 34 | 2019 | Dodge | Grand Caravan | 2C7WDGBGXKR799461 | 9461 | 100,996 | Enterprise | $14,691.00 |
| 35 | 2019 | Dodge | Grand Caravan | 2C7WDGBG9KR799466 | 9466 | 95,771 | Enterprise | $16,815.00 |
| 36 | 2022 | Ford | F-550 | 1FDUF5GN3NEC20124 | 0124 | 15,522 | Orange Grove | N/A |
| 37 | 2017 | Ford | Transit-150 | 1FMZK1CM5HKB20510 | 0510 | 137,505 | Orange Grove | N/A |
| 38 | 2019 | Dodge | Grand Caravan | 2C4RDGBG9KR780989 | 0989 | 174,683 | Orange Grove | N/A |
| 39 | 2019 | Dodge | Grand Caravan | 2C7WDGDG4KR801043 | 1043 | 108,053 | Orange Grove | N/A |
| 40 | 2019 | Dodge | Grand Caravan | 2C7WDGBGXKR801094 | 1094 | 70,538 | Orange Grove | N/A |
| 41 | 2019 | Dodge | Grand Caravan | 2C7WDGBG6KR801416 | 1416 | 114,725 | Orange Grove | N/A |
| 42 | 2019 | Dodge | Grand Caravan | 2C7WDGBG0KR801945 | 1945 | 89,255 | Orange Grove | N/A |
| 43 | 2019 | Dodge | Grand Caravan | 2C7WDGBG4KR803018 | 3018 | 63,845 | Orange Grove | N/A |
| 44 | 2019 | Dodge | Grand Caravan | 2C7WDGBG8KR803037 | 3037 | 84,181 | Orange Grove | N/A |
| 45 | 2019 | Dodge | Grand Caravan | 2C7WDGBG7KR803062 | 3062 | 133,026 | Orange Grove | N/A |
| 46 | 2019 | Dodge | Grand Caravan | 2C7WDGBG3KR793551 | 3551 | 74,616 | Orange Grove | N/A |
| 47 | 2019 | Dodge | Grand Caravan | 2C7WDGBG9KR793585 | 3585 | 142,107 | Orange Grove | N/A |
| 48 | 2020 | Chrysler | Voyager | 2C4RC1AG7LR243623 | 3623 | 21,887 | Orange Grove | N/A |
| 49 | 2019 | Dodge | Grand Caravan | 2C7WDGBG7KR745034 | 5034 | 160,305 | Orange Grove | N/A |
| 50 | 2019 | Dodge | Grand Caravan | 2C7WDGBG5KR805070 | 5070 | 35,918 | Orange Grove | N/A |
| 51 | 2019 | Dodge | Grand Caravan | 2C7WDGBG4KR805075 | 5075 | 24,051 | Orange Grove | N/A |
| 52 | 2021 | Ford | Transit 350 | 1FBAX2C85MKA15671 | 5671 | 23,083 | Orange Grove | N/A |
| 53 | 2022 | Ford | F-550 | 1FDUF5GN2NEC75857 | 5857 | 10,547 | Orange Grove | N/A |
| 54 | 2022 | Ford | F-550 | 1FDUF5GN4NEC75858 | 5858 | 15,864 | Orange Grove | N/A |
| 55 | 2019 | Dodge | Grand Caravan | 2C7WDGBGXKR756531 | 6531 | 167,668 | Orange Grove | N/A |
| 56 | 2019 | Dodge | Grand Caravan | 2C7WDGBG6KR727060 | 7060 | 153,086 | Orange Grove | N/A |
| 57 | 2019 | Dodge | Grand Caravan | 2C7WDGBG4KR737277 | 7277 | 199,505 | Orange Grove | N/A |
| 58 | 2021 | Ford | F-550 | 1FDAF5GY1KDA27761 | 7761 | 11,445 | Orange Grove | N/A |
| 59 | 2019 | Dodge | Grand Caravan | 2C4RDGBG9KR758071 | 8071 | 147,471 | Orange Grove | N/A |
| 60 | 2019 | Dodge | Grand Caravan | 2C7WDGBG5KR808261 | 8261 | 106,605 | Orange Grove | N/A |
| 61 | 2022 | Ford | F-550 | 1FDUF5GN3NEC38588 | 8588 | 15,806 | Orange Grove | N/A |
| 62 | 2019 | Dodge | Grand Caravan | 2C7WDGBG3KR678657 | 8657 | 100,724 | Orange Grove | N/A |
| 63 | 2018 | Dodge | Grand Caravan | 2C7WDGBG5KR698876 | 8876 | 172,976 | Orange Grove | N/A |
| 64 | 2022 | Ford | F-550 | 1FDUF5GN6NEC29318 | 9318 | 22,366 | Orange Grove | N/A |
| 65 | 2019 | Dodge | Grand Caravan | 2C7WDGB6KR799389 | 9389 | 154,467 | Orange Grove | N/A |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| In re: | ) | Case No. 22-11694-BFK |
| | ) | (Chapter 11) |
| KTS SOLUTIONS, INC. | ) | |
| | ) | SubChapter V |
| Debtor. | ) | |
| | ) | |

**EXHIBIT B – LIST OF TRANSFERS POTENTIALLY
AVOIDABLE PURSUANT TO 11 U.S.C. § 547**

| Transferee | Amount Received within 90 days of Bankruptcy |
|---|---|
| **Apex Funding** | $27,000.00 |
| **Bizfund, LLC** | $24,642.28 |
| **Prosperum Capital, LLC d/b/a Arsenal Funding** | $8,000.00 |
| **Fundamental Capital LLC** | $110,000.00 |
| **Legacy Capital 26, LLC** | $62,157.88 |
| **Moneywell Group** | $26,211.00 |
| **Enterprise Fleet** | $25,500.00 |
| **Orange Grove Fleet Solutions LLC** | $150,000.00 |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| In re: | ) | Case No. 22-11694-BFK |
| | ) | (Chapter 11) |
| KTS SOLUTIONS, INC. | ) | |
| | ) | SubChapter V |
| Debtor. | ) | |
| | ) | |

**EXHIBIT C – LIST OF NON-TAX PRIORITY CLAIMS OF THE DEBTOR**

| Employee Creditor | 401k Contribution Due |
|---|---|
| Allen, Cali L. | $600.15 |
| Allieu, Alhassan | $3,190.96 |
| Berger, Laverna D. | $95.46 |
| Blas, Rafael | $221.97 |
| Blount, Josephine | $1,294.77 |
| Brown, Branden M. | $4,065.44 |
| Bryant, Chasity L. | $619.12 |
| Cobb, Thesda | $1,787.39 |
| Davis, Alexus F. | $453.79 |
| Day, Gary | $2,680.94 |
| Dunn, Karen V. | $2,080.24 |
| Elderpass, Bobby L. | $1,546.29 |
| Ellis, Roy L. | $37.13 |
| Foster, George | $3,576.96 |
| Fuentes, Juan F. | $3,801.27 |
| Garnica, Pedro G. | $176.40 |
| Gunn, Alan | $3,691.03 |
| Hamby, David C. | $756.28 |
| Hazeltine, David A. | $3,795.93 |
| Herrera, Carlos H. | $3,978.82 |
| Holloway-Blankenship, Cocoa L. | $1,417.20 |
| Hudson, Mabaki Y. | $1,106.17 |
| Husak, Jeff | $3,576.32 |
| Hutton, Armis | $717.05 |
| Jackson, Kenneth E. | $3,271.85 |
| Jackson, William H. | $334.51 |
| Jason, Jesse E. | $1,356.80 |
| Johnson, Howard D. | $588.27 |

44

| | |
|---|---|
| Johnson, Robert C. | $3,930.73 |
| Kearney, Gregory | $1,443.91 |
| Keys, Theodore | $4,159.35 |
| Lacey, Yvette C. | $2,430.22 |
| Lamm, Austin W. | $546.48 |
| Lawton, Greg J. | $1,629.02 |
| Locke, Kevin R. | $2,629.69 |
| Lorenzo, Edmund M. | $2,309.85 |
| Margo, Anthony W. | $3,867.93 |
| Mcpherson, Trinity J. | $3,093.15 |
| Melville, Joy-Ann | $4,346.07 |
| Mendez hill, Sandra T. | $905.83 |
| Mohamed, Anita M. | $202.51 |
| Molina, Angel M. | $1,072.68 |
| Morgan, Kevin | $2,385.62 |
| Muhammad, Jamal R. | $124.15 |
| Oliver, Wendell L. | $1,270.52 |
| Osborn, Shelbi D. | $684.84 |
| Penny, Edward C. | $1,738.99 |
| Rentz, Chaundra N. | $530.42 |
| Riess, Charlie H. | $3,872.69 |
| Rivera, Melvin | $213.28 |
| Rosa, Pedro L. | $3,504.16 |
| Rudolph, Antonio C. | $1,029.27 |
| Santos Flores, Jaime | $3,038.73 |
| Simmons, Donovan | $1,468.73 |
| Smith, Donald | $4,162.33 |
| Smith, Richard R. | $2,800.02 |
| Smitha, John P. | $1,446.41 |
| Sneed, Frank | $2,487.72 |
| Soto, Justina L. | $3,900.80 |
| Taylor, Sharon W. | $865.71 |
| Thomas, Antwan O. | $2,023.53 |
| Valbuena, Joseph M. | $1,454.44 |
| Vass, Stanley E. | $3,726.46 |
| Villacorte, Alberto R. | $407.19 |
| Whitlock, Melissa J. | $1,568.41 |
| Williams, Cornelius | $4,177.75 |
| Yeager, Sherryl A. | $905.98 |
| **Grand Total** | **$133,774.04** |
| Non-priority amounts | $414,000.00 |

| Total | $547,774.04 |
|-------|-------------|

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| In re: | ) | Case No. 22-11694-BFK |
| | ) | (Chapter 11) |
| KTS SOLUTIONS, INC. | ) | |
| | ) | SubChapter V |
| Debtor. | ) | |
| | ) | |

**EXHIBIT D**

**LIST OF CLAIMS TO BE TREATED AS
GENERAL UNSECURED CLAIMS AGAINST THE DEBTOR NOT CURED
THROUGH ASSUMPTION**

| CLAIMANT | CLAIM NO. | AMOUNT |
|----------|-----------|--------|
| Prosperum Capital Partners LLC d/b/a Arsenal Funding | 40 | $49,460.00 |
| Comptroller of the Treasury | 38 | $532.00 |
| K-Dimensional Holding Inc. | 37 | $24,077.66 |
| Spark Funding, LLC dba Fundamental Capital | 36 | $1,073,417.46 |
| Moneywell Grp. | 35 | $130,450.00 |
| North Carolina Department Of Revenue | 33 | 1438.56 |
| Hewlett-Packard Financial Services Company | 32 | $99,203.04 |
| HRC Mast One LLC | 29 | $30,235.28 |
| BizFund, LLC | 28 | $148,540.97 |
| LVNV Funding, LLC | 27 | $2,471.13 |
| Georgia Department of Revenue | 24 | $738.29 |
| Berkovitch & Bouskila, PLLC | 23 | $89,340.95 |
| Apex Funding Source | 22 | $400,607.00 |
| Indiana Department of Revenue | 21 | $375.56 |
| U.S. Bank, N.A. d/b/a U.S. Bank Equipment Finance | 17 | $143,926.52 |
| Small Business Administration | 16 | $1,185,007.64 |
| First Citizens Bank & Trust Company | 15 | $118,614.04 |

| | | |
|---|---|---|
| Ample Storage Center | Scheduled | $563.87 |
| Anthem Blue Cross and Blue Shield | Scheduled | $75,751.89 |
| Athletico | Scheduled | $1,737.66 |
| Automotive Credit Corporation | Scheduled | $1,917.89 |
| Beneco/ Ascensus | Scheduled | $1,800.00 |
| Black Coach Transportation Service LLC | Scheduled | $13,114.05 |
| Blanchard and Calhoun Real Estate Co | Scheduled | $2,778.17 |
| Charis Services, LLC | Scheduled | $25,000.00 |
| Charter Communications | Scheduled | $442.52 |
| CheckR, Inc. | Scheduled | $2,195.15 |
| Chrysler Capital | Scheduled | $20,680.47 |
| Comdata | Scheduled | $16,002.60 |
| Concentra | Scheduled | $11,252.50 |
| Cygna Healthcare | Scheduled | $78,376.51 |
| Duke Health Services | Scheduled | $207.00 |
| Ford Motor Credit Company | Scheduled | $12,188.78 |
| Harvey Lindsay Commercial Real | Scheduled | $6,586.10 |
| JAX Patient Care, Inc | Scheduled | $1,209.83 |
| JPRS, Inc. | Scheduled | $5,260.00 |
| Legalshield | Scheduled | $458.60 |
| Life EMS, Inc. | Scheduled | $42,465.05 |
| Mobility 1 Transport LLC | Scheduled | $19,937.53 |
| Patient First | Scheduled | $5,307.00 |
| Pre-Paid Legal Services, Inc. | Scheduled | $343.95 |
| Professional Med Team | Scheduled | $13,284.32 |
| RTW Management, Inc/ George Goates | Scheduled | $583,323.00 |
| Samsara | Scheduled | $80,925.88 |
| Shred360 | Scheduled | $424.60 |
| T-Mobile | Scheduled | $2,200.00 |
| United States Cellular Corp. | Scheduled | $16,365.29 |
| Wex Fuel Card | Scheduled | $2,393.29 |
| Xerox Financial Services | Scheduled | $173,320.00 |
| Total | | $4,716,249.60 |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| In re: | ) | Case No. 22-11694-BFK |
| | ) | (Chapter 11) |
| KTS SOLUTIONS, INC. | ) | |
| | ) | SubChapter V |
| Debtor. | ) | |
| | ) | |

**EXHIBIT E – CHAPTER 7 LIQUIDATION ANALYSIS**

In a hypothetical Chapter 7 case, the SBA would assert a right to setoff the Debtor's receivables against its claim, which exceeds the amount of receivables.  Further, Action Capital and the SBA assert senior secured claims to all of the Debtor's tangible non-vehicle assets. Accordingly, the Debtor's only assets available for general unsecured creditors in Chapter 7 are the Debtor's deposit accounts, Avoidance Actions, and any equity in the Debtor's vehicles. After receipt of the ERTC credit, the Debtor estimates that such assets would be valued at approximately $2.3 million, as set forth below:

| Asset | Value |
|---|---|
| Deposit Accounts/ Incoming ERTC Credit | $1,884,162.99 |
| Vehicle Equity after costs of sale | $350,000.00 |
| Avoidance Actions | $100,000.00 |
| Total | $2,334,162.99 |

In a hypothetical Chapter 7 case, a Chapter 7 Trustee would likely incur the following administrative expenses

Chapter 7 commission per 11 U.S.C. § 326: $93,274.00

Estimated Professional Fees for Chapter 7 trustee:  $150,000.00

Further, a Chapter 7 Trustee would have to pay Action Capital back its post-petition financing in the amount of $661,344.30.

Further, conversion to Chapter 7 would lead to at least an approximately $462,000.00 increase in Chapter 11 Administrative Claims due to the inability to make administrative payroll paid in arrears (amounting to approximately $195,000) and pay ordinary course post-petition accounts

payable (amounting to approximately $257,000) in the ordinary course and stub rent for December 2022 in the approximate amount of $10,000.00

Further, in a hypothetical Chapter 7 case, the following estimated payments would be made to holders of Chapter 11 Administrative Claims for professionals, including the Trustee. $50,000.00

Further, in a hypothetical Chapter 7 case, the following payments would be made to holders of priority tax claims. $42,737.52

Further, in a hypothetical Chapter 7 case, the following payments would be made to holders of priority employee benefit claims $133,774.04

In addition, conversion to Chapter 7 would result in the creation of a rejection damages claims in favor of landlords in the amount of approximately $145,000, increasing the pool of general unsecured claims, and the general unsecured pool of creditors would be increased would be increased by non-priority amounts not cured, totaling approximately $870,000.

Accordingly, there would be estimated $605,894.14 to pay a pool of unsecured claims in the approximate amount of $5,963,832.25, for a distribution to unsecured creditors of 13.13%.

| Category | Amount |
|---|---:|
| Unencumbered Assets Available for Distribution | $2,334,162.99 |
| Ch. 7 trustee commission | $93,274.00 |
| Ch. 7 professional fees | $150,000.00 |
| Repayment of Post-petition financing | $661,344.30 |
| Earned Payroll not yet paid | $195,000.00 |
| Post-petition accounts payable | $257,000.00 |
| Stub rent/ administrative rent | $15,000.00 |
| Estimated Chapter 11 professional expenses | $50,000.00 |
| Priority tax claims | $42,737.52 |
| Priority 401k claims | $133,774.04 |
| Amount Available for Unsecured Claims | $736,033.13 |
| Total unsecured Ch. 7 claims | $5,586,249.60 |
| Percent Distribution in Chapter 7 | 13.18% |

In a Chapter 11 case, the total unsecured claims would be reduced by cure payments and assumption of commercial leases, leaving at most $4,716,249.60 in allowed general unsecured chapter 11 claims.

Under the Plan, assuming all claims are allowed, and assuming $100,000 of Avoidance Action Proceeds, holders of General Unsecured Claims will receive total payments of $820,000 on at most $4,963,832.25 in allowed unsecured claims, providing for an estimated 17.39% return to holders of Allowed Unsecured Claims.

Accordingly, general unsecured creditors would receive more under the Plan than they would in Chapter 7.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| In re: | ) | Case No. 22-11694-BFK |
| | ) | (Chapter 11) |
| KTS SOLUTIONS, INC. | ) | |
| | ) | SubChapter V |
| Debtor. | ) | |
| | ) | |

**EXHIBIT F – FINANCIAL PROJECTIONS**

| | 6/2023 - 5/2024 | 6/2024 - 5/2025 | 6/2025 - 5/2026 | |
|---|---|---|---|---|
| **Anticipated Income** | | | | |
| Contract Revenue | $ 8,400,807 | $ 8,400,807 | $ 8,400,807 | |
| Total Revenue | $ 8,400,807 | $ 8,400,807 | $ 8,400,807 | |
| | | | | |
| **Anticipated Expenses** | | | | |
| Salaries & Wages, Independent | $ 4,165,000 | $ 4,165,000 | $ 4,165,000 | |
| Employee Expense Reimbursements | $ 24,000 | $ 24,000 | $ 24,000 | |
| Employer 401k Contributions | $ 300,000 | $ 300,000 | $ 300,000 | |
| Payroll Expense | $ 24,000 | $ 24,000 | $ 24,000 | |
| Health Insurance | $ 402,000 | $ 402,000 | $ 402,000 | |
| Dental, Vision, Accident Insurance, | $ 126,000 | $ 126,000 | $ 126,000 | |
| Office Rent | $ 198,000 | $ 198,000 | $ 198,000 | |
| Office Utilities | $ 30,000 | $ 30,000 | $ 30,000 | |
| Fuel Reserves | $ 720,000 | $ 720,000 | $ 720,000 | |
| Orange Grove | $ 516,000 | $ 516,000 | $ 516,000 | |
| Subcontractors | $ 300,000 | $ 300,000 | $ 300,000 | |
| Auto Insurance | $ 625,947 | $ 625,947 | $ 625,947 | |
| Business Insurance | $ 72,000 | $ 72,000 | $ 72,000 | |
| Auto Loan Payments | $ 150,000 | $ 150,000 | $ 150,000 | |
| Auto Maintenance | $ 175,000 | $ 175,000 | $ 175,000 | |
| Business Software | $ 66,000 | $ 66,000 | $ **66,000** | |
| Communication/Internet/Wireless | $ 42,000 | $ 42,000 | $ 42,000 | |
| Office Expenses/Supplies | $ 42,000 | $ 42,000 | $ 42,000 | |
| Bank Fees | $ 9,600 | $ 9,600 | $ 9,600 | |
| Travel | $ 42,000 | $ 42,000 | $ 42,000 | |
| Legal/ Accounting | $ 36,000 | $ 36,000 | $ 36,000 | |
| 401k audit | $ 17,000 | $ 17,000 | $ 17,000 | |
| EIDL | $ 65,844 | $ 65,844 | $ 65,844 | |
| Misc (Stretchers, etc.) | $ 50,000 | $ 50,000 | $ 50,000 | |
| | | | | |
| Total Expenses | $ 8,198,391 | $ 8,198,391 | $ 8,198,391 | |
| | | | | |
| **Annual Net Income** | $ 202,416 | $ 202,416 | $ 202,416 | |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| In re: | ) | Case No. 22-11694-BFK |
| | ) | (Chapter 11) |
| KTS SOLUTIONS, INC. | ) | |
| | ) | SubChapter V |
| Debtor. | ) | |
| | ) | |

**EXHIBIT G**
**LIST OF MERCHANT CASH ADVANCE CLAIMANTS**

The Merchant Cash Advance Claimants shall consist of any and all persons or entities who have purported to purchase the Debtor's accounts receivable, which includes, but is not limited to:

Apex Funding Source LLC
BizFund, LLC
Cloudfund LLC
Fox Capital Group, Inc.
JZ enterprises of Florida Inc DBA FAC Solutions
Legacy Capital 26, LLC
Moneywell Group  LLC.
NewCo Capital Group LLC d/b/a Capytal.com
Prosperum Capital Partners LLC d/b/a Arsenal
Spark Funding, LLC dba Fundamental Capital
Unique Capital

Those certain creditors which filed the below-listed UCC Statements

| Filing Date and Time | Filing Number | Listed Name of Secured Party | Optional Filer Reference |
|---|---|---|---|
| 2/18/2022 4:12:24 PM | 202202180008698 | CORPORATION SERVICE COMPANY, AS REPRESENTATIVE P.O. BOX 2576, UCCSPREP@CSCINFO.COM Springfield IL 62708 | 2271 21367:227121367 |
| 3/24/2022 6:27:01 PM | 202203240080799 | Corporation Service Company, As Representative P.O. Box 2576, Uccsprep@Cscinfo.Com Springfield Il 62708 | 2291 28593:229128593 |

52

| | | | |
|---|---|---|---|
| 3/30/2022 12:14:55 PM | 202203300007928 | CT Corporation System, as representative<br>330 N Brand Blvd, Suite 700<br>ATTN SPRS<br>Glendale, CA 91203 | 85691418 |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| In re: | ) | Case No. 22-11694-BFK |
| | ) | (Chapter 11) |
| KTS SOLUTIONS, INC. | ) | |
| | ) | SubChapter V |
| Debtor. | ) | |
| | ) | |

**EXHIBIT H – INSIDERS EMPLOYED BY DEBTOR**

| Relation to Kelvin Smith | Employee Name | Hire Date | Job Title | Annual Compensation | 2021 Y/E Annual Bonus |
|---|---|---|---|---|---|
| Niece | DeShay, Ashleigh | 06/28/2021 | Accounting Clerk | $38,568.00 | |
| Daughter | Smith, Kenisha | 01/15/2010 | Accounts Receivable Specialist | $62,000.00 | $1,500.00 |
| Niece | Ahead, Inc., Surge (Starla Brown) | 10/01/2022 | Chief Financial Officer | $151,200.00 | |
| Niece | Dinkins, Shundra | 03/25/2019 | Payroll & Benefits Coordinator | $62,000.16 | $1,500.00 |
| Sister | Yarbrough, Patricia | 09/15/2019 | Invoice Validation Consultant | $20,400.00 | |
| Grand-Daughter | Smith, Danielle | 10/16/2018 | Administrative Assistant | $36,410.88 | |
| Self | Smith, Kelvin | 05/30/2005 | Chief Executive Officer | $160,000.08 | |
| Daughter | Smith, Ebony | 12/01/2007 | Vice President | $85,000.00 | $10,000.00 |
| Son | Deloatch, Darrius | 10/01/2018 | Regional Manager | $62,000.16 | $1,500.00 |
| Niece | Smith, Tiana | 08/17/2020 | Dispatcher | $41,683.20 | |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| In re: | ) | Case No. 22-11694-BFK |
| | ) | (Chapter 11) |
| KTS SOLUTIONS, INC. | ) | |
| | ) | SubChapter V |
| Debtor. | ) | |
| | ) | |

**EXHIBIT I– CONTRACTS TO BE ASSUMED**

| Contract Counterparty | Description | Cure payment |
|---|---|---|
| **8888 San Diego LLC**<br>**PO Box 7930**<br>**Beverly Hills, CA 90212** | **Lease for 8888 Miramar Road, Suite 2, San Diego, California 92126** | **$8,160.00** |
| **Adobe, Inc.**<br>**345 Park Ave**<br>**San Jose, CA 95110** | **Adobe Pro licenses** | **$0.00** |
| **A&T Transportation Services**<br>**317 Michael Selby**<br>**Hampton, VA 23666** | **Subcontractor** | **$89,208.00, either on the Effective Date, or to be paid over one year in equal monthly payments, in Debtor's discretion.** |
| **Charis Services, LLC**<br>**8926 Baltimore St # 949**<br>**Savage, MD 20763** | **Subcontractor** | **$0.00** |
| **Crown Medical Transit**<br>**2204 N Aft Bend**<br>**Saint Johns, FL 32259** | **Subcontractor** | **$0.00** |
| **Department of Veterans Affairs**<br>**24 Frank Lloyd Wright Drive**<br>**Lobby M, Suite M2200**<br>**Ann Arbor, MI 48105** | **Agreement to furnish assisted patient wheelchair-accessible van transportation services for eligible beneficiaries of the Battle Creek Veterans Affairs Medical Center.**<br><br>**Contract No. 36C25020D0023** | **$0.00 to counterparty.**<br><br>**All priority and non-priority retirement account claims will be paid.  See Exhibit C** |
| **Department of Veterans Affairs**<br>**Network Contracting Office 6**<br>**100 Emancipation Drive**<br>**Hampton, VA 23667** | **Contract award in response to VA Solicitation No. 36C24620Q0421.** | **$0.00** |
| **Department of Veterans Affairs** | **Provision of wheelchair** | **$.00 to counterparty.** |

| | | |
|---|---|---|
| **Network Contracting Office 6**<br>**100 Emancipation Drive**<br>**Hampton, VA 23667** | **vans for beneficiaries**<br>**for whom such service**<br>**is specifically**<br>**authorized by the**<br>**Durham VA Medical**<br>**Center, Durham, North**<br>**Carolina**<br><br>**Contract No. 36C24621D0042** | **All priority and non-priority**<br>**retirement account claims will be**<br>**paid. See Exhibit C** |
| **Department of Veterans Affairs**<br>**Network Contracting Office 8**<br>**300 E. University Ave.,St. 180**<br>**Gainesville, FL 32601** | **Provision of non-emergency,**<br>**special mode transportation**<br>**services for beneficiaries in the**<br>**Southern Region of**<br>**North Florida/South**<br>**Georgia Veterans Health System**<br>**(NF/SG VHS), and its**<br>**associated healthcare**<br>**facilities.**<br><br>**Contract No 36C24822P0001** | **$.00 to counterparty.**<br><br>**All priority and non-priority**<br>**retirement account claims will be**<br>**paid. See Exhibit C** |
| **Department of Veterans Affairs**<br>**Network Contracting Office 22**<br>**4811 Airport Plaza Dr, Ste 600**<br>**Long Beach, CA 90815** | **Provision of shuttle bus services to**<br>**and from two off-site parking lots**<br>**for the VA**<br>**San Diego Healthcare**<br>**System (VASDHS) in the area**<br>**designated as D.1 VASDHS**<br>**Medical Center La Jolla to the**<br>**medical center located at 3350 La**<br>**Jolla Village Drive, San**<br>**Diego, CA 92161.**<br><br>**Contract No.**<br>**36C24822P000136C26221C0073** | **$.00 to counterparty.**<br><br>**All priority and non-priority**<br>**retirement account claims will be**<br>**paid. See Exhibit C** |
| **Enterprise FM Trust & Enterprise**<br>**Fleet Management, Inc.**<br>**223 Water Country Parkway**<br>**Williamsburg, VA 23185** | **Equity Lease Agreement.**<br>**Debtor asserts this is actually a**<br>**financing agreement to be**<br>**treated pursuant to Section**<br>**4.11 of the Plan.  However, to**<br>**the extent it is determined to be**<br>**an executory contract, it is**<br>**assumed.** | $151,492.74 |
| **The Guardian Life Insurance**<br>**Company of America** | **Life Insurance for employees** | $13,402.00 |
| **Highline Charter, Inc.**<br>**3413 E St**<br>**San Diego, CA 92102** | **Subcontractor** | $0.00 |
| **Intuit Quickbooks**<br>**5601 Headquarters Dr.**<br>**Plano, TX 75024** | **Software** | $0.00 |

| Medi-Routes<br>2303 N 44th St.<br>Suite 14-1735<br>Phoenix, AZ 85008 | Subcontractor | $0.00 |
|---|---|---|
| Microsoft Corporation<br>1 Microsoft Way<br>Redmond, WA 98052 | licenses for<br>Microsoft 365 Business | $0.00 |
| Orange Grove Fleet Solutions LLC<br>3301 W. Moore Street<br>Richmond, VA 23230 | Master Vehicle Lease | $250,000.00, either on the Effective Date, or to be paid over one year in equal monthly payments, in Debtor's discretion. |
| Paylocity<br>1400 American Lane<br>Schaumburg, IL 60173 | Payroll services | $0.00 |
| Prince Georges County, Maryland | Contract To provide Wheelchair van transportation for Maryland Assistance recipients to and from medical and dialysis facilities on a required basis.<br><br>Contract No. WS402407534 | $0.00 |
| Regus Management Group LLC<br>15305 Dallas Parkway<br>Suite 1400<br>Addison, TX 75001 | Lease for office space at<br>251 North Rose Street, Suite 200,<br>Kalamazoo MI 49007 | $389.00 |
| Reliable Transportation Inc.<br>850 Beech St Ste 2204<br>Duarte, CA 91010 | Subcontractor | $0.00 |
| Storage Kings USA<br>3437 Western Branch Blvd<br>Chesapeake, VA 23321 | Office Space/ Storage | $964.80 |
| TS 2nd Ave LLC<br>3227 SW 42nd Place<br>Gainesville, FL 32608 | Lease for Unit X<br>Parkwood Professional Plaza, 3601 SW 2nd Ave, Gainesville, FL 32601 | $750.00 |
| UnitedHealthcare Insurance Company | Health Insurance Provider | $7,322.85 |
| Yeung Interests, LLC (claim filed by Griffin Associates Realtors)<br>c/o Griffin Associates Realtors<br>1816 Front St<br>Suite 110 | Lease for 2921 Guess Road, Durham, NC 27705 | $2,193.00 |

| Durham, NC 27705 | | |
|---|---|---|